## MEEKER *v.* THE COMMISSIONERS OF THE CLINTON AND PORT HUDSON RAILROAD COMPANY.

Sec. 24 of the stat. of 14 March, 1842, relative to the liquidation of banks, giving to the commissioners appointed under the statute the powers of syndics, has never been considered as placing the stock mortgages under the control of the commissioners.

A mortgage to secure a loan not made at the date of the mortgage, is an obligation subject to a potestative condition on the part of the debtor. Such a mortgage does not take effect from the date of the registry. It has effect only from the date, and for the amount, of the loan.

APPEAL from the District Court of East Baton Rouge, *Burk,* J. *Joor,* and *T. G. Morgan,* for the plaintiff. *A. M. Dunn,* and *Roselius,* for the appellants. *Elmore,* Attorney General, for the State. The judgment of the court was pronounced by

ROST, J. The plaintiff enjoined an execution issued by the commissioners of the Clinton and Port Hudson Railroad Company, on a twelve-months' bond given to them by her, for the purchase at sheriff's sale of certain property mortgaged to the Company by her husband, *Moses Meeker,* and herself, to secure stock and a stock loan of her said husband. The grounds of injunction are that the petitioner, though not a party to the loan, was a party to the mortgage; that having an interest in discharging the claim, she is entitled by law to the privilege of paying nine-tenths of it in the obligations of the Company; that she has tendered to the defendants and to the sheriff ten per cent of the amount of the bond in specie, and the balance in notes and bonds of the Company, which they have refused to receive. The defendants aver that the plaintiff is their debtor by a contract with them for the purchase of property, and cannot avail herself of the privileges granted to the debtors of the corporation before its failure. The injunction was perpetuated, and the defendants appealed.

The Clinton and Port Hudson Railroad Company being desperately insolvent, its charter was adjudged to be forfeited by a decree of court, and its assets

MEEKER
*v.*
CLINTON AND
PORT HUDSON
RAILROAD COM-
PANY.

placed in the hands of the defendants, as State commissioners. If no other questions arose in this case but those apparently involved in the issue, it would present no difficulty after the decisions in *Felps* v. *Commissioners, &c.* 10 Rob. 89. *French el al.* v. *Stanton et al.* 1 Ann. R. 8. On those questions the judgment appealed from is clearly erroneous. But, on the argument, the evidence in the record suggested another enquiry, to which, as guardians of the public interest, we deemed it our duty to call the attention of the counsel in the cause and of the attorney general. That officer has appeared on behalf of the State, and asks that the sale under which the plaintiff claims be set aside and annulled. The grounds of his application will be best understood by a brief statement of the facts of the case.

The property sold to the plaintiff had been mortgaged to the Company by her husband and herself, in July, 1838, to secure one hundred and ninety shares of one hundred dollars each, of its capital stock, and the act contained a stipulation that the mortgagor, *Moses Meeker*, should be entitled to a credit equal in amount to one-half of his stock, and that the same property should stand mortgaged for the loan. In 1839, the legislature, notwithstanding the well considered objections of the governor, passed an act authorising the loan of the bonds of the State to the Company for the sum of $500,000; the Company bound itself to pay the capital and interest of said bonds; and, in order to secure the payment thereof, pledged to the State their capital stock, with all their property moveable, immovable. and slaves, and subrogated the State to all the stock mortgages which had been executed under the original and amended charter of the Company, amounting to the sum of $750,000. These conditions having been complied with, the bonds were delivered to the Company, who have never paid the interest accruing upon them.

On the 20th July, 1840, *Moses Meeker* availed himself of his credit to the amount of $3,566, for which he gave his note payable one year after date, and renewable according to the provisions of the charter. This note was not paid at maturity; and after the rendition of the judgment of forfeiture, in 1842, the commissioners instituted proceedings against *Meeker* upon it, and obtained judgment for the amount thereof and interest, and further that the property described in the act of mortgage be seized and sold under the decree. The property was accordingly sold, but no certificate of mortgage was produced by the sheriff on the day of sale, and no mention was made of the stock mortgage. The commissioners appearing to be of opinion that it was extinguished by the judicial sale, and that they were authorized to grant a release of it on the books of the recorder of mortgages; so that, if the sale was legally made, the plaintiff, who became the purchaser, now holds the property free from the stock mortgage. The question presented is, whether that mortgage was extinguished by the judicial sale; and, if not, whether the commissioners have power to grant a release of it.

The act appointing the commissioners was passed on the 26th of March, 1842. It provides that the liquidation shall be conducted according to the provisions of an act passed for the liquidation of banks on the 14th of the same month. No express authorisation is given in the latter act to the commissioners of the banks to interfere with the stock mortgages pledged to the State, but the 24th section of the act provides that, in all matters not specially provided for, the powers, duties, and liabilities of the commissioners shall be the same as those conferred or imposed on syndics of insolvent estates. Sess. Acts of

1842, p. 34. The stock mortgages are not, properly speaking, assets of the bank, and the section giving to the commissioners the powers of syndics has never been considered as placing those mortgages under their control.

It was argued at bar that the relation existing between the Clinton and Port Hudson Railroad Company and the State was that of debtor and creditor; and a distinction was endeavored to be drawn from this assumed fact between the situation of that corporation, and that of the property banks. The distinction is not easily perceived. The bonds of the State were loaned, and the stock mortgages given in pledge in this case, as in the others. If the act for the liquidation of banks gave no power to the bank commissioners over the stock mortgages, it can give none to the defendants. But besides, in the act authorizing the appointment of these commissioners, the legislature have placed their intention beyond all doubt, by providing that nothing therein contained shall be so construed as to affect the right of the State to foreclose the mortgages of the stock-holders according to existing laws. Sess. Acts of 1842, p. 460.

The course adopted by the commissioners in this case not only affects the right of the State, but effectually destroys it. They have not sold, the stock debt and mortgage, which is all they would have power to do if they had any control over these claims, but, in a sale under the mortgage to secure a loan, they have considered themselves authorized to sink the whole stock mortgage. Should their powers be such as they suppose, this proceeding would still be illegal, and the only way in which the property could have been transferred free from mortgages, would have been to sell it under the stock debt and the mortgage given to secure it, that mortgage taking the precedence of the other.

The commissioners seem to have acted under the belief that the mortgage for the stock and the mortgage for the loan were of equal rank, because they were included in the same act and bore even date. This is an error. The stipulation of a mortgage to secure a loan not made, is an obligation on a condition potestative on the part of the debtor. Conventional mortgages of that kind do not take rank from the date of their inscription. It is not the contract itself which forms the *vinculum juris*, but the accomplishment of the condition. The mortgage would have remained inoperative if the credit had not been used, and it can only have effect from the date and for the amount of the loan. 2 Troplong, Hypothèque, nos. 477–480. The loan in this case, case was made more than a year after the State had been subrogated to the rights of the Company in the stock mortgages. Those mortgages take rank from the date of their inscription, and when property affected by them is seized for a stock loan, made after that inscription, it must be sold subject to them. The sheriff was without warrant of law to sell the property free from the stock mortgage: and the commissioners are not authorized to release it. The amount of the adjudication was less than the amount of the stock mortgage, and therefore there was no sale. No title vested in the plaintiff under the adjudication, and he cannot be required to pay the price.

For the reasons assigned it is ordered that the judgment so far as it perpetuates the injunction, be affirmed with costs, It is further ordered that the siezure be set aside, that the sale made to the plaintiff, and the bond given by her, be avoided and annulled; reserving to the defendants their rights under the judgment obtained by them against *Moses Meeker*.