RICHARD WOOD *et al.*

*v.*

HENRY WHELEN.

1. ADMISSIONS *in answer in chancery—whether conclusive upon party making them.* In a suit in chancery to foreclose a mortgage executed by an alleged private corporation, certain judgment creditors of the mortgagor company were made parties defendant. The bill alleged that the company became incorporated under the act of 1857, and the several amendments thereto, on the 15th day of November, 1871, and this allegation was admitted by the judgment creditors in their answers. It was *held*, such admission was conclusive upon those making it, although it appeared the certificate or license required by the statute was not in fact issued until January, 1872, which was subsequent to the date of the mortgage.

2. EXECUTION OF MORTGAGE BY CORPORATION—*as to proof thereof—burden of proof.* The execution of a mortgage under the seal of a corporation, regular on its face, and by the properly constituted officers, is *prima facie* evidence the mortgage was executed by the authority of the corporation, and parties objecting take on themselves the burden of proving it was not so executed.

3. BONDS OF A CORPORATION *convertible into stock of the company—of their validity.* Upon bill to foreclose a mortgage executed by a private corporation to secure the payment of certain bonds issued by the company, it was objected by judgment creditors of the company that the bonds contained a provision that they were convertible, at the option of the holder, into common stock of the company until a certain day named, and that if so converted it would be equivalent to an increase of the stock of the company without the assent of the stockholders, which could not properly be done, and by reason of such provision in the bonds they were invalid. But it was *held*, the pro-

| | |
|---|---|
| 93 | 153 |
| 23a | 51 |
| 93 | 153 |
| 135 | 666 |
| 93 | 153 |
| 36a | 257 |
| 93 | 153 |
| 148 | 171 |
| 148 | 257 |
| 93 | 153 |
| 151 | 203 |
| 93 | 153 |
| 51a | 563 |
| 93 | 153 |
| 60a | 186 |
| 93 | 153 |
| 164 | 152 |
| 93 | 153 |
| 68a | 348 |
| 93 | 153 |
| 76a | 636 |
| 93 | 153 |
| 78a | 681 |
| 93 | 153 |
| 181 | 424 |
| 93 | 153 |
| 186 | ²159 |
| 93 | 153 |
| 188 | ¹⁰ 30 |

vision could not operate to excuse the company from paying the money it had obtained on the faith of the bonds, and which they were given to secure, and did not affect their validity as such security.

4. SAME—*of the authority to issue them—powers of board of directors—ratification.* All business relating to the legitimate objects of a corporation authorized by its charter may be transacted by the directors without the sanction of the stockholders.

5. So, where the act under which a company has become incorporated provides such company shall have power to borrow money and secure the same by deed or lien upon its real or personal property, or both,—as borrowing money for the purpose of forwarding the objects of the corporation is among the ordinary duties of the board of directors, it follows the board may secure the same by deed or other lien.

6. And where an act has been done which it is competent for a legally constituted directory to do, but which was done without authority existing at the time, the directory may ratify the unauthorized act, and such subsequent ratification will be equivalent to a precedent authority to do the act so confirmed.

7. In this case the promotors of a private corporation, acting as directors of the *de facto* organization not yet incorporated, adopted a resolution that, for the purpose of completing and putting in successful operation the works for the erection and carrying on of which the company had been organized, and to provide for the subsequent extension of such works, there should be issued a certain number of bonds of the company, to be secured by a mortgage upon its property, upon which to borrow money for the purpose indicated. In pursuance of such resolution, and after the company became incorporated, the bonds were executed by the regularly constituted officers of the corporation, and also a mortgage, under the seal of the corporation, upon the property of the company. Subsequently, and while the bonds and mortgage were still in the possession of the company, the directory of the corporation, by resolution, gave express authority to their agent to sell these bonds, upon certain prescribed terms, and to deliver the mortgage for their security: It was *held*, this action of the board of directors of the corporation was equivalent to an original authority to issue the bonds, and an adoption of the mortgage previously executed, as well as a ratification of the action of the promotors of the corporation in respect thereto,—so that, irrespective of the question as to the power of the promotors of the corporation to bind the future corporation, the securities became the valid and binding obligations of the corporation by its own act of adoption and ratification through its directory.

8. SEALED INSTRUMENT OF CORPORATION—*as to the mode of its adoption or ratification.* Where a mortgage has been executed in the name of an incorporated company, signed by the properly constituted officers of the corporation, and sealed with the corporate seal, the board of directors of the corporation

may adopt the instrument, giving it the full force of a deed of the corporation, by a simple resolution to that effect, without the form of again attaching the corporate seal to the paper,—and this, notwithstanding the mortgage may have been executed originally without competent authority.

9. Corporation—*implied power to borrow money and execute securities therefor.* In this case there was, by express provision of the charter of the corporation, power given to the company to borrow money and give a lien on its property for the payment of the loan;—but without such express authority, a private corporation may borrow money for the promotion of the object of its creation, and may secure the same on the property of the corporation, by mortgage or otherwise, as being within its implied or incidental powers, and the corporation would be estopped to deny it had authority to pledge its property, real or personal, or both, for the payment of the money.

10. Mortgage—*what property is embraced therein—of additions to the property by the mortgagor.* Additions of a permanent character, by way of improvements, on mortgaged premises, made by the owner or mortgagor, are regarded as a part of the mortgaged estate, and may be sold with it. If the owner of the land, during the existence of the mortgage, shall affix any property to it by way of additions or otherwise, such property will become a fixture, in the general sense of that term, and such additions will pass with the estate on foreclosure.

11. *Here,* the Elgin Gas Company made a mortgage upon its real estate, " together with the gas works thereon, with all the appurtenances thereto belonging and now situated and being thereon, together with all machinery, tools, implements, materials, fixtures in and about the same, and in anywise appertaining; and also the gas mains, pipes and service pipes connected with said gas works and now laid under ground in the said city, and all the gas meters now on hand and in use in connection with said pipes;—together with the office, office fixtures and furniture now in the said city and used by said company." It was *held,* the lien of the mortgage was not necessarily restricted to the property in the condition it was at the time the mortgage was executed, but any enlargement of the original works, or an extension of mains in streets and under land not owned by the company, upon license granted for that purpose, and all additional machinery attached to and supplied for the use of the works, would be regarded as but additions to and a part of the original mortgaged property, and would pass with the estate under a sale upon foreclosure.

12. The mortgage, by definite description, included "office furniture and fixtures," and also tools and machinery used about the works, and if additions were from time to time made to such office furniture, as the necessities of the business of the works required, the old with the additions thereto would constitute " office furniture and fixtures," and "fixtures in and about" the works, as those terms were used in the mortgage, and therefore to be considered as embraced therein.

13. SAME—*as to real and personal property—whether it may be sold together.* In a mortgage given by a gas company there was embraced not only the real estate upon which the gas works were situated, but also the "machinery, implements, materials and fixtures in and about the same," "together with the office, office fixtures and furniture." The mortgage provided the personal property embraced within it should be sold with the other property. Upon foreclosure it was held proper to decree that the property be so sold—the real estate and the personal property together, even including such articles as coke, coal and other property on hand necessary for the carrying on of the works.

14. SAME—*application of profits in hands of trustee in possession.* Upon foreclosure of a mortgage upon the works and property of a gas company, there was found in the hands of the trustee in possession, a sum of money which was the net income of the property embraced in the mortgage, and it was held proper that such money should go in reduction of the mortgage indebtedness.

15. SAME—*whether the decree bars the statutory right of redemption.* In this case, which was upon bill to foreclose a mortgage, a construction was given to the decree of foreclosure in reference to its effect upon the statutory right of judgment creditors of the mortgagor to redeem from the sale under the decree, and it was held there was nothing contained in the decree which could operate to abridge that right.

16. ASSIGNMENT OF ERROR—*by whom.* Judgment creditors of a mortgagor whose mortgage embraces both real and personal property, who have no lien on the personal property, can not be heard to complain that a decree of foreclosure of the mortgage directs a sale of both classes of property together.

17. SUIT PREMATURELY BROUGHT—*subsequent agreement not fulfilled.* Notwithstanding an agreement entered into between the parties to a mortgage, by which, upon certain considerations and conditions, the mortgagee was to extend the time of payment of the mortgage debt, if the mortgagor fails to perform the new agreement on his part he can not insist a suit brought to foreclose the mortgage is prematurely brought merely because the proposed extended time has not elapsed.

WRIT OF ERROR to the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and Hon. GEORGE W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices.

This was a suit in chancery, commenced in the circuit court of Kane county, and tried therein before the Hon. HIRAM H. CODY, Judge, presiding. Afterwards, upon writ of error from the Appellate Court, the decree of the circuit

court was affirmed. Thereupon the cause was brought to this court for review upon writ of error to the Appellate Court.

The bill was to foreclose a mortgage, and a decree of foreclosure was entered in the circuit court. Those now complaining of the decree are the Elgin Gas Light Company, the mortgagor, and certain judgment creditors of the mortgagor.

Messrs. TRUMBULL, CHURCH & TRUMBULL, for the plaintiffs in error, the judgment creditors, with whom were Messrs. E. & A. VAN BUREN, for the Elgin Gas Light Company:

The decree of foreclosure was erroneous in ordering the real and personal property to be sold together. *De Wolf* v. *Haydn*, 24 Ill. 529; *Farrel* v. *Parlier*, 50 id. 276; *Myers* v. *Manny*, 63 id. 214; *Wayman* v. *Cochrane*, 35 id. 155.

The mortgage to Comegys, as to plaintiffs in error, does not cover all the property, real and personal, belonging to the Elgin Gas Light Company, at the time of the entry of the decree. It only covers the property of the company at the time of its execution. *Pennock* v. *Coe*, 23 How. 117; *Winslow* v. *Merchants' Ins. Co.* 4 Metcalf, 306; *Jones* v. *Richardson*, 10 id. 481; *Otis* v. *Sill*, 8 Barb. 102; *Despatch Line of Packets* v. *Bellamy Manf. Co.* 12 N. H. 205.

The mortgage of December 1, 1871, is not a valid legal mortgage as against the claim of plaintiffs in error.

As a matter of fact the Elgin Gas Light Company was not organized until January 17, 1872, the date of the license, and this fact affirmatively appears in the record from complainant's testimony. But for an inadvertent admission in the answer of plaintiffs in error this fact would be decisive of the case, under the decision of this court in *Stowe* v. *Flagg*, 72 Ill. 397, and *Bigelow* v. *Gregory*, 73 id. 197, and other cases, for the reason that the mortgage was executed December 1, 1871, which was before the Elgin Gas Light Company came into being.

It may be doubted whether this admission is conclusive on plaintiffs in error.

The answer, when not under oath, has no other or greater effect, as evidence, than the bill. Sec. 20, Chancery Act, Rev. St. 201.

Statements in a bill are not to be taken as conclusive against the complainant. 1 Greenleaf's Ev. sec. 551.

But whatever view the court may take as to the effect of this admission, we insist the mortgage, as to plaintiffs in error, is invalid.

Even if the Gas Company had been a corporation October 25, 1871, the directors could not have authorized the execution of this mortgage.

By an amendment to the statute under which this company was incorporated, it is provided, that "any *company* organized under the provisions of said act, and this amendment, shall have power to borrow money on the bonds of the company, and to secure the same by deed or lien on their real estate or personal property, or both."

Whether the corporate property shall be incumbered at all by bond and mortgage, is for the *company* to determine.

"The shareholders constitute the company, when there is stock, and not the directors." *Simons* v. *Vulcan Oil and Mining Co.* 61 Pa. St. 221.

The directors are the agents of the company, and not the company itself. *Ohio and Miss. R. R. Co.* v. *McPherson*, 35 Mo. 13; *Miller* v. *Ewer*, 27 Me. 509.

In *Railway Co.* v. *Allerton*, 18 Wall. 233, in speaking of what may be done by the directors, and what by the stockholders, in a case where the charter provided that "all the corporate powers of said corporation shall be vested in and exercised by a board of directors, and such officers and agents as said board shall appoint," the court say:

"The general power to perform all corporate acts refers to the ordinary business transactions of the corporation." And again: "If the charter provides that the capital stock may be increased * * * by the corporation, this is undoubtedly authority for the corporation (that is, the stockholders,)

to make such a change by a stockholders' vote in the regular way."

In the case at bar, the language of the incorporating act conferring authority on the board of directors is by no means as broad as in the case just cited. The language of this statute is: "The affairs of such company shall be managed by a board," etc.

This refers to ordinary, not extraordinary affairs, and the mortgaging of the entire property of the incorporation is certainly not an ordinary affair of the company.

See, also, 1 Redf. Am. Ry.Cases, 563, 2d ed.; *Eidman* v. *Bowman*, 58 Ill. 446; *Aurora Ag. Soc.* v. *Paddock*, 80 id. 263.

Upon the question of ratification of the mortgage,—there being no notice to the judgment creditors, they could not be affected by the ratification, even if it were in fact made.

A subsequent purchaser was protected against the subsequent ratification of a deed which required a confirmation to make it binding, where he had no notice of the confirmation, in the case of *Black et al.* v. *Hills et al.* 36 Ill. 376.

As to real estate, the law of Illinois places judgment creditors on the same footing with innocent purchasers. *Martin* v. *Dryden*, 1 Gilm. 187.

But there was no ratification of the mortgage. *Hanford* v. *McNair*, 9 Wend. 56; *Despatch Line of Packets* v. *Bellamy Manf. Co.* 12 N. H. 205.

Mr. JOHN W. RANSTEAD, for the defendant in error:

This mortgage and these bonds are in due form and under the corporate seal of the company. The court will presume that they were executed by authority of the corporation. The contrary must be shown by the objecting party. Angell and Ames on Corporations, sec. 244; *Bank of Vergennes* v. *Warren*, 7 Hill, 94; *Reed* v. *Bradley et al.* 17 Ill. 325; *Lovett* v. *Steam Saw Mill Association*, 6 Paige Ch. 60; *Clarke* v. *The Imperial Gas Light and Coke Co.* 4 Barn. and Adol. 315 (24 E. C. L. R. 143).

It was properly executed by the president of the corporation. *Smith* v. *Smith et al.* 62 Ill. 496, and *Sawyer* v. *Cox,* 63 id. 134.

In this case the corporation was authorized by its charter to borrow money and execute securities therefor; but without such express authority the company had, at common law, a right to alien or dispose of its lands and chattels, unless especially restrained by the statute. Independent of positive law, all corporations have this absolute *jus disponendi,* neither limited as to objects nor circumscribed as to quality. *Curtis et al.* v. *Leavitt,* 15 N. Y. 66; Angell & Ames on Corporations, sec. 187; *Galena* v. *Corwith,* 48 Ill. 424; *Aurora Agricultural and Horticultural Society* v. *Paddock et al.* 80 id. 264.

It was not essential to the power of the directors to ratify and adopt the mortgage, that they should receive direct authority from the stockholders.

A subsequent ratification is equivalent to a prior authority; and the doctrine of ratification applies to corporations as well as to individuals. Green's Brice Ultra Vires, 462; *Allen* v. *Cerro Gordo Co.* 34 Iowa, 54; *Evans* v. *Chicago and Rock Island Railroad Co.* 26 Ill. 193; *Darst* v. *Gale,* 83 id. 142; Story on Agency, sec. 239.

"If a corporation ratify the unauthorized act of its agent, the ratification is equal to a previous authority, as in the case of a natural person." Angell and Ames on Corporations, sec. 304; *Johnson* v. *County of Stark,* 24 Ill. 88-89.

That a contract made by individuals in view of the organization of an incorporated company may be adopted by such corporators, when formed, so as to render the corporation liable thereon, is also established by the following cases: *Hoag* v. *Lamont,* 60 N. Y. 96; 16 Abb. Prac. N. S. 372-6; *Fredendall* v. *Taylor,* 26 Wis. 286; *Paxton* v. *Bacon,* etc., 2 Nevada, 257.

The subsequent accessions to the mortgaged property passed with the estate on foreclosure. Tyler on Fixtures, pp. 103, 113, 114, 620; 1 Washburn on Real Prop. (3d Ed.) 15; *Arnold* v. *Crowder,* 81 Ill. 655.

Gas pipes, water pipes, and gas mains, laid in the ground are fixtures to the realty or appurtenances of it. *Gas Company* v. *Hunter*, 2 R. I. 157; Tyler on Fixtures, p. 402; *Wall* v. *Hinds*, 4 Gray's R. 256; *Philbrick* v. *Ewing*, 97 Mass. R. 133, 136. See, also, *Hunt* v. *Bullock et al.* 23 Ill. 327; *Martin* v. *Beatty*, 54 id. 100; *Arnold* v. *Crowder*, 81 id. 56.

It is not necessary that the mortgage should in terms convey subsequently acquired property, for a mortgage of a specific thing carries along with it, or as incident, all subsequent accessions, as, the natural increase of animals, or crops raised upon land. Redfield on Railways (2d Ed.) p. 590.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Although a great many objections have been taken to the decree in this case, it is apparent on investigation that the controlling questions are not numerous, and may be stated without any very extended discussion. There is scarcely any disagreement between the parties as to the facts, and indeed counsel, in their respective statements, do not state the facts essentially different from what the circuit court found them to be, as recited in its decree.

The bill was brought to foreclose a mortgage, made by the Elgin Gas Company, dated December 1, 1871, to secure fifty bonds made by the company, of even date with the mortgage, each for the sum of $500, payable five years after date, with interest at the rate of ten per cent per annum, payable semi-annually. Although the mortgage and bonds of the gas company bear date as of December 1, 1871, they were not in fact sold and delivered until May, 1872. After the maturity of the bonds, Walter D. Comegys, trustee for the holders, brought this bill, alleging the non-payment of the principal and interest of the bonds, to foreclose the mortgage by which they were secured.

The allegation of the bill, that the Elgin Gas Company became incorporated under the act of 1857, and the several amendments thereto, on the 15th day of November, 1871, is

admitted, not only in the answer of the gas company, but in the answers of the judgment creditors who are the principal parties complaining of the decree rendered by the circuit court. That admission must be regarded as conclusive, although it does appear the certificate or license required by the statute to be issued was not in fact issued until in January, 1872. As a matter of fact the gas company was organized prior to the date mentioned, was transacting business such as a corporation might lawfully do, and hence was a *de facto* corporation, and the admission it was an incorporated company under the laws of the State is conclusive upon the parties making it.

It may be assumed, therefore, for all the purposes of this decision, that prior to December 1, 1871, when the gas company formally executed the mortgage and bonds, it was a corporation existing under the laws of the State, and by its charter had authority to borrow money and secure the same by mortgage deed upon any property, real or personal, it might have. The execution of a mortgage under the seal of the company, regular on its face, by the properly constituted officers, is *prima facie* evidence it was executed by the authority of the corporation, and parties objecting take on themselves the burden of proving it was not so executed. That is the precise case here. The bonds were executed under the corporate seal of the company, and were executed by its president and secretary at a time when it is admitted the company issuing such bonds was regularly incorporated under the laws of the State.

One fact appearing on the face of the bonds which it is said renders them invalid is, that each bond "is convertible into common stock of the company until the 1st day of December, 1876."

It might be said, as the time in which it was provided such bonds might be converted into the stock of the company had elapsed, and the holders had not elected to exercise the option given, that clause contained in the bonds is now wholly inoperative, and can not therefore affect their validity

But waiving that view, it is not perceived how that provision would excuse the company from paying the money it had borrowed and which the bonds were intended to secure. That clause contained in each bond might not be valid for the reason assigned, that it would, if the bond should be converted into stock of the company, be equivalent to an increase of its stock without the assent of the stockholders. As this fact appears on the face of every bond, the holder would, of course, be affected with notice that he might not be able to convert it into common stock of the company, unless the stockholders should thereafter assent.

The case of *Sturgis* v. *Stetson*, 1 Biss. 246, is cited as an authority against the validity of these bonds on account of the provision they contain, that they may be converted at the option of the holder at any time before December 1, 1876, into stock of the company. That case is not analogous, either in the principle discussed, or in its facts, with the one at bar. In that case the action was brought on a promissory note given by defendant to plaintiff for stock bought of the railroad company at a price less than the price fixed by the charter. It was held the sale of stock in a railroad company by the directors, at a less rate than the price fixed by the charter, is a fraud in law and on the stockholders, and that the issuing by the directors of a bond convertible into stock, is the same in effect as the sale of so much stock, and the sale of such a bond at a discount is unlawful and void. As the contract was executory the defence was let in to the note, not because defendant could not coerce the company into a recognition of the stock he had purchased, but because, if affected with notice, the stock in his hands would be subject to the right of the stockholders, prior to plaintiff's subscription, to have it reduced to the charter value of his shares. Exercising the option which defendant had, either to pay the money and carry out the contract or to stand on matters in bar, he chose the latter, and his defence was allowed to prevail as to the note given for the stock.

The case of *Eidman* v. *Bowman,* 58 Ill. 444, only declares the well understood doctrine that where the charter is silent as to how the capital stock of an incorporated company may be increased, it can not be done by the directors merely by virtue of their position as such officers without the assent of the stockholders.

The case of *Railway* v. *Allerton,* 18 Wall. 233, declares the same doctrine and nothing more.

It will be observed the cases cited declare no principle that would render these bonds invalid on account of the clause they contain making them convertible into stock of the company issuing them. At most the company might not have been under obligation to issue to the holders of such bonds stock of the company at its par value, if application had been made for that purpose, but nevertheless their obligation was absolute to pay the sum of money named in such bonds.

It is true, it appears among the recitals in the mortgage that at a meeting of the directors of the gas company held on the 25th of October, 1871, it was resolved by the board, that for the purpose of completing and putting in successful operation the Elgin Gas Works, and to provide for the further extension of the mains, and greater supply of gas, to issue fifty bonds of the denomination of $500, payable in five years from date with interest at the rate of ten per cent per annum, payable semi-annually, but it did not on the face of the bonds themselves state that was the only authority the directors had for issuing such bonds. Indeed that fact did not appear at all on the face of the bonds.

It does appear, however, the parties adopting the resolution of October 25, 1871, were the promotors of the corporation about to be formed, acting as directors of the *de facto* organization, and after the incorporation was perfected continued to act as directors of the company.

Without discussing whether the action of the promotors who may originate a corporation will bind the future corporation, it will appear in the sequel that the action of the

prcmotors of the gas company was fully ratified by the action of the directors of the company on the 27th day of May, 1872, long after the incorporation of the company was completed. The subsequent action of the legally constituted directory was equivalent to precedent authority to issue the bonds, and as the rights of no third parties had then intervened there could be no question as to the right of the directors to ratify and confirm the action of the promotors of the corporation. *Stanly* v. *Chester and B. R. W. Co.* 3 My. & Cr. 773.

Counsel endeavor to maintain that the *prima facie* case made by the production of the bonds, regular on their face, issued under the seal of the corporation and signed by the proper officers, if such is the case, that such bonds were issued by authority of the corporation, is overcome by proof that the only authority for issuing such bonds was the resolution of October 25, 1871. Without admitting the correctness of the position taken, there is other authority shown for issuing these bonds that is sufficient in law to make them the obligations of the corporation. It will be noted these bonds were not, in fact, issued and delivered to the parties furnishing the money on them until May, 1872. Until that date, although executed by the officers of the company, the bonds and mortgage remained in the possession of the company, and not having been delivered they were valueless as securities. On the 27th of May, 1872, by action of the board of directors, there was express authority given to the non-resident agent of the company to sell these bonds at a certain price, provided a sale could be effected within a limited period, which was done.

It is undeniably the law that all business relating to the legitimate objects of the corporation, authorized by its charter, may be transacted by the directors without the sanction of the stockholders. The act under which the gas company was incorporated provides, such companies shall have power to borrow money and secure the same by deed or lien on their real or personal property or both. As borrowing money for the purpose of forwarding the objects of the corporation is

among the ordinary duties of the board of directors, it follows the board may secure the same by deed or other lien. It is a part of the business transactions of the corporation which has always been regarded as within the province of the directors to perform.

In *West* v. *Madison Co. Agricultural Board,* 82 Ill. 205, the law conferred no express authority on the corporation to make a mortgage to secure money borrowed for its use, yet it was held the power to mortgage the property of the corporation is one incident to its existence and might be exercised in furtherance of the objects for which the corporation was created. There, the power to mortgage the property of the corporation to secure its indebtedness was exercised by the directors without the sanction of the stockholders, and it was regarded as binding on the corporation.

In *Miller* v. *R. and W. R. R.* 36 Ves. 452, it was declared, a corporation may contract debts necessary for the accomplishment of the purposes of its creation and may secure the same by mortgage of any property subject to its disposal by virtue of the implied powers existing in it, where it is under no statutory restriction in that respect. Increasing the capital stock of a corporation, or other acts changing essentially its character, do not pertain to the ordinary business of the corporation, and can not, therefore, be done by the directors, but to be legal must have the sanction of the stockholders.

That which was done on the 27th of May, 1872, was equivalent to original authority to issue the bonds and the adoption of the mortgage previously executed as security for the same, and as these were acts the directors might perform by virtue of the implied powers existing in the corporation necessary to its existence, as well as powers given by express statute, it is a valid execution of powers. But it is said the action of the board of the 27th of May is, at most, an indirect ratification of the bonds, but not of the lien to the holders thereof, which the mortgage gave. It is not accurate to say the action of the board of directors of that date was nothing more than a ratifi-

cation of either the bonds or mortgage. As we have seen, it was original authority for issuing the bonds for the purpose of borrowing money for the use of the company in the business it had undertaken, and for delivery of the mortgage as security to the holders, as well as a ratification of the action of the promotors of the corporation previously had.

The objection implied in the inquiry, if no seal was attached to the mortgage, would the resolution of the directors of May 27, 1872, have attached the corporate seal of the company to it or authorized any one to do it, is hypercritical. It is not claimed that it would. But the seal being already attached to the instrument executed and still in their possession, the directors could adopt it without re-sealing as a new act. It was attached, and to re-attach the seal before delivering the mortgage would be an idle ceremony. The delivering of the mortgage and bonds by authority given by the resolution of the directors at the time of the sale to the holders, sealed with the corporate seal of the company and with the signatures of its officers attached, has all the binding force in law as if the seal and the signatures of the officers had been placed there again after the adoption of the resolution. It would be so in the case of natural persons, and private corporations are subject to the same liabilities in the transaction of business. Authorities, sustaining at some degree the views we have expressed on this branch of the case, are *Miller* v. *R and W. R. R.* 36 Ves. 452; *Meeker* v. *C. and P. H. R. R.* 2 La. Ann. 972.

The money obtained on the bonds was to be and was used for the objects of the corporation as declared in its charter. It was for the promotion of the objects for which the corporation was created, and if no express authority had been given to obtain the money and secure it on the property of the corporation by mortgage or otherwise, it would be within its implied or incidental powers, and the corporation would, on the plainest principles of natural justice, be estopped to deny it had authority to pledge its property, real or personal, or both, for the re-payment of the money.

As respects the judgment creditors complaining of the decree, it is sufficient to say the mortgage was valid by the action of the board of directors taken on the 27th of May, 1872, which was before their supposed judgment liens attached to the property of the corporation, and as against them it is the prior lien. This view being conclusive as to the validity of the mortgage lien, it will not be necessary to consider the effect of the ratification by the stockholders on the 22d of January, 1877, on the rights of judgment creditors previously acquired. Without such ratification by the stockholders the mortgage was a valid lien upon the property of the corporation embraced in it, and the question whether it was ratified by them or not is immaterial.

The only other question that has relation to the merits of the case that we deem necessary to be considered is, whether all the property decreed to be sold is fairly embraced in the mortgage. We think it is. The mortgage conveys the real estate upon which the buildings are situated by appropriate description, " together with the gas works thereon, with all the appurtenances thereunto belonging, and now situated and being thereon, together with all machinery, tools, implements, materials, fixtures in and about the same and in anywise appertaining; and also the gas mains, pipes and service pipes connected with said gas works and now laid under ground in the said city and all the gas meters now on hand and in use in connection with said pipes; together with the office, office fixtures and furniture now in the said city and used by said company ;" and also the franchises of the corporation and the privileges obtained by grant from the city. The granting clause of the mortgage is very comprehensive, and was no doubt intended to, as it does, include everything appertaining to the gas works, not only the real estate and the permanent fixtures attached thereto, but all machinery, tools, implements, meters and office fixtures used by the company in operating the works, and without which it would be impracticable to use the gas works proper. All these things are

embraced in the mortgage, with the real estate, as constituting one entire property necessary to the efficient operation of the gas works.

As the public demand for gas increased it became necessary to enlarge the original works, and the extension of mains was in effect only additions to the works already constructed at the time of the execution of the mortgage. The same is true as to all additional machinery attached to and supplied for the use of the works, and like the extension of mains is included in and forms a part of the original mortgaged property. It is the mortgaged property, only enlarged by the owner. Additions of a permanent character by way of improvements on mortgaged premises, made by the owner or mortgagor, are regarded as a part of the mortgaged estate, and of course may be sold with it. It is apprehended it is in the power of the owner of land to affix any property to it by way of additions or otherwise, and when he does so it becomes a fixture, in the general sense of that term, and if the property at the time was subject to a mortgage such additions will pass with the estate under the foreclosure. That gas pipes and water mains extended in streets and under land which the company may not own, when license is granted for that purpose, are appurtenant to the principal estate and constitute a part of it, is a proposition so plain it need not be discussed.

The mortgage included by definite description office furniture and fixtures, and also tools and machinery used about the works. It is probable such office furniture, as well as the machinery attached thereto, may have been from time to time increased, as the necessities of the works required; but nevertheless, the old, with the additions thereto, constituted "office furniture and fixtures," "machinery," and "fixtures in and about" the works, as those terms are used in the mortgage, and may therefore fairly be considered as embraced in it.

An objection is taken that the bill was prematurely filed, on account of the agreement of the 22d of January, 1877, which it is said waived the default in the payment of the

principal of the bonds, and the semi-annual interest, which fell due December 1, 1876. That agreement was not performed by the gas company, and the bondholders were at liberty to proceed to foreclose their mortgage as though no such agreement had been made. Having failed to perform the agreement, the gas company will not be permitted to insist as a defence that the other party did not extend the time for the collection of their claims, and we are not aware other parties can complain of an infraction of the alleged agreement.

It does not appear the judgment creditors had any lien on the personal property decreed to be sold with the real estate, as their judgment was obtained in another county, and the execution was only levied on the real estate of the company. That being the case it is not perceived how the judgment creditors can complain of that part of the decree if it does not affect their interests in any way. But in our opinion there was no error in the decree in that respect. The mortgage provided the personal property embraced within it should be sold with the other property, and clearly the company can not complain if it was so done. The decree provides for the sale of the real estate on which the gas works are situated, "with all machinery, implements, material and fixtures in and about the same," "together with the office, office fixtures and furniture." What articles of personal property were on hand at the date of the decree does not appear. Complaint is made that "an old stove pipe, a map of the city of Elgin, a Hall's safe, office chairs and desks, 300 bushels of coke and 15 tons of coal" are not shown to have belonged to the company at the date of the mortgage, and are not therefore included in it. But it does not appear the court decreed that those articles should be sold as a part of the mortgaged property. Those articles were included in the schedule made by the trustee of the bondholders when he took possession for them of the gas works and the property belonging thereto. It is not disclosed by anything appearing in this record that those articles enumerated in the schedule were still on hand at the date of the

decree of foreclosure, and it is not at all probable that any of the coke or coal remained unconsumed. Conceding, however, that some of the articles enumerated were on hand, they were all, with the exception of a few of insignificant value, necessary for the use of the works, in the hands of the trustee. Had these articles been sold separately the trustee would have been compelled to purchase other like articles, or allow the works to stand idle, and it was no doubt for the best interests of all parties concerned that the material, tools and machinery on hand and embraced in the mortgage should all be sold with the gas works, and as a part of the same. Attached to the estate as necessary to operate and make the works profitable in the hands of the mortgagee in possession they were of value, but detached as mere chattels they would not be of the same value, or anything like it.

As respects the money in the hands of the trustee in possession of the gas works, appropriated by the decree in reduction of the mortgage indebtedness, we perceive no error. It was the net income of the property embraced in the mortgage, and it was proper it should go in reduction of the mortgage indebtedness.

Our statute in relation to "judgments, decrees and executions," provides that where any defendant fails to redeem "real estate" sold on execution or decree against him, within twelve months, any decree or judgment creditor may, after the expiration of twelve months, and within fifteen months from the date of such sale, redeem the premises in a particular mode designated.

In our opinion it is a misapprehension of the effect of the decree to suppose it concludes the judgment creditors made parties to the bill from exercising whatever rights they may have under the statute to redeem the property within three months after the expiration of the twelve months allowed by statute to the owner to redeem, as other judgment creditors would have the right to do. It is apparent, when the whole decree in all its parts is considered, it was not the intention,

nor does the decree bar any judgment creditor, whether made party to the bill or not, from exercising whatever right he may have to redeem the property within the period fixed by the statute for that purpose.

Perceiving no substantial error in the decree, it will be affirmed.

*Decree affirmed.*