### BELLEVILLE SAV. BANK *v.* WINSLOW.

*(Circuit Court, E. D. Missouri. June 13, 1888.)*

BANKS AND BANKING—PRESIDENT—RELEASE—RATIFICATION BY ACQUIESCENCE.

In consideration of the relinquishment of bonds held as collateral, a transfer of stock, and a cash payment, a bank president executed a release to a debtor of the bank, informing him that the directors had not then assented thereto. The directors afterwards authorized the president and discount committee to compromise the debt, and later rejected the compromise; but no notice of either action was given to the debtor. The bank afterwards sold the bonds without notice to the debtor, and collected dividends on the stock, for which and for the cash payment it made certificates of deposit in favor of the debtor and his wife, but retained them, and the debtor had no knowledge of them. These transactions extended over a period of seven years. *Held,* that the release was ratified.[1]

At Law. Action on a judgment.

*C. W. Thomas*, for plaintiff.

*John O'Day* and *J. M. Hamill*, for defendant.

---

[1] As to what will constitute a ratification by a principal of the unauthorized acts of its agent, and the effect of such ratification, see *Latham* v. *First Nat. Bank*, (Kan.) 18 Pac. Rep. 824, and note.

THAYER, J.    This is an action on a judgment recovered against the defendant in the circuit court of the United States for the Southern district of Illinois on the 23d of February, 1877, in the sum of $24,600.    The point has been made by the defendant that the court which rendered the judgment sued on had no jurisdiction of the case, and that the judgment, on that account, is void.    On the other hand, it is claimed that the jurisdiction of the circuit court of the United States for the Southern district of Illinois to render the judgment was upheld in *Bank* v. *Calhoun*, 102 U. S. 256.    I have not found it necessary to determine the jurisdictional question so raised, as, according to the view I have taken of the case, the judgment sued upon, whether valid or invalid, has been released by the judgment creditor.    For the information of counsel, it will suffice to say that I predicate my decision on the following findings of fact: .

On August 29, 1878, the defendant, being then indebted to the plaintiff in the sum of about $30,000, consisting of the judgment now sued upon and a note for $4,000, through his attorney, Mr. Hamill, proposed to compromise the debt by relinquishing to the plaintiff all the collateral then held by it as security for the debt, consisting of bonds of the St. Louis & S. E. R. R., of the par value of $48,000, and, in addition, to transfer to the plaintiff six and one-half shares of the stock of the Belleville Building & Loan Association, and to pay plaintiff the sum of $350 in cash.    Plaintiff's president, (Mr. Abend,) to whom the proposition was made, unquestionably assented to the proposition, and executed a release of the indebtedness in the name of the bank, and accepted a transfer of the six and one-half shares of stock and the sum of $350 in cash.    I have no doubt, however, that, at the time of accepting the offer and executing the release, he informed defendant's attorney that the board of directors had not as yet assented to the compromise, and that he was acting on his own responsibility, without the formal assent of the board.    Subsequently, on September 4, 1878, the board of directors, by resolution, authorized the president and discount committee to compromise the debt on the best terms obtainable, and later still, on November 8, 1878, the board passed another resolution rejecting the proposed compromise.    Neither of these resolutions, however, appears to have been communicated to the defendant; nor was the stock in the building and loan association, or the cash payment of $350, ever returned to the defendant, or tendered to him before the day of trial. Some time after the delivery of the release and receipt of the sum of $350, the plaintiff made out a certificate of deposit in favor of the defendant for the sum of $350, retaining the same, however, in its possession.    It also collected dividends on the building company's stock in the sum of $195, and made out a certificate of deposit for that amount in favor of defendant's wife, which it also retained.    Neither of these certificates was tendered to the defendant before the day of trial, and the evidence fails to show that the defendant was ever notified that such certificates had been executed, or that the bank held any money for his or his wife's account.    The bank afterwards sold all of the bonds of the St. Louis & S. E. R. R., originally deposited with it as collateral to secure the indebtedness, at the price of 12½ cents on the dollar of their par value, and made such sale without notice to the defendant.    In the year 1884 the plaintiff was made a party to a proceeding to liquidate the affairs of the building and loan association; and, although duly served with process as a stockholder of the association, it suffered a decree to go against it as one of the defendants, which ascertained and found, among other things, that plaintiff was the owner of six and one-half shares of stock in the association, acquired by purchase from defendant's wife on August 29, 1878.

The foregoing facts are practically conceded, with the single exception that there is some controversy as to whether the relinquishment by defendant of all his interest in the bonds held by the bank as collateral to secure the indebtedness formed a part of the consideration for the release executed by its president. Mr. Abend's recollection, as to this point, does not seem to be very clear or reliable. On the other hand, defendant's testimony with reference to that matter, the situation of the parties at the time the compromise was proposed, and the manner in which the bank subsequently dealt with those securities as if they were its own property, together warrant the conclusion that defendant did propose to surrender his interest in the collateral, to transfer to the bank six and one-half shares of stock in the building association, and to pay $350 in cash, on condition that the indebtedness was released. The alternative presented to the bank, if this proposition was not accepted, was that the defendant would seek a discharge from his debts under the bankruptcy act. The president of the bank admits that one reason that induced him to sign the release was that he did not want the bank "dragged into court" as a party to bankrupt proceedings. It is a fair conclusion, I think, from all the testimony, that a proposition to compromise the indebtedness for the consideration last above stated, was made to Mr. Abend, and that he accepted the same on the part of the bank, believing, no doubt, that it was the best course to pursue under the circumstances, and that the board of directors would ratify his action.

The act of the president of the corporation in executing the release would, no doubt, bind the corporation as an act within the scope of his apparent power, although the corporate seal was not attached to the release, but for the fact that notice was given to the defendant's attorney, at the time the release was signed, that the board of directors had not given their assent to the same. Such seems to be the law in Illinois, where the release was executed. *Ryan* v. *Dunlap*, 17 Ill. 40; *Railroad Co.* v. *Coleman*, 18 Ill. 297; *Sawyer* v. *Cox*, 63 Ill. 130; *Wood* v. *Whelen*, 93 Ill. 153; *Smith* v. *Smith*, 62 Ill. 493.

Does the fact, then, that defendant was notified, when the release was signed, that the compromise agreement had not been approved by the board, and that its approval was necessary, affect the validity of the release, in view of the subsequent action of the corporation as above recited? This question must be answered in the negative. In the first place, by selling the collateral bonds, and appropriating the proceeds, without notifying the defendant of its action, as well as by collecting and appropriating the dividends on the building company's stock, the corporation effectually ratified the compromise agreement made by its president. It could not appropriate the consideration paid by the defendant for the release of the indebtedness in the manner stated, without assenting to the release. The device adopted of making out certificates of deposit for the amount of the dividend collected on the stock, as well as for the cash payment of $350 made when the release was signed, does not alter the legal effect of what was done, for the reason that defendant was not consulted, and does not appear to have had any knowledge of

the existence of the certificates until the day of trial. The stock having been delivered, and the money having been paid to obtain a release, it is obvious that the bank had no right to retain the consideration, and deal with it in the manner shown, unless it ratified the release. It certainly had no right to constitute itself an agent of the defendant to collect dividends on the stock, and hold the same for his account, or to issue a certificate therefor in the name of his wife; and its attempt to assume that relation, without authority from the defendant, puts it in no better position than it would have occupied if certificates of deposit had not been executed. Its plain duty was to restore the stock, and refund the money, which had been paid as the consideration for the release, or, at least, to have made a tender of the money and stock when the compromise was rejected. As the bank gave the defendant no notice that its board had rejected the offer of compromise, and in the mean time, for a period of nearly seven years, dealt with the consideration as its own, merely adopting the thin disguise of making out certificates of deposit to represent moneys received, which it did not even tender to the defendant, it must be held that by its acts it has as effectually ratified the agreement made by its president as it could have done by a formal resolution of its board of directors. Judgment is accordingly entered for the defendant.