55:31 LRA 267

THE MULLANPHY SAVINGS BANK *et al.*

*v.*

OTTO G. SCHOTT *et al.*

*Filed at Mt. Vernon January 24, 1891.*

| 135 | 655 |
| 154 | 367 |
| 135 | 655 |
| 156 | 633 |
| 47a | 556 |
| 135 | 655 |
| 54a | 651 |
| 135 | 655 |
| 168 | 300 |
| 135 | 655 |
| 181 | 643 |
| 135 | 655 |
| 99a[13] | 561 |
| 135 | 655 |
| 100a[11] | 226 |
| 100a[11] | 227 |
| 135 | 655 |
| 104a [2] | 658 |
| 135 | 655 |
| 204 [2] | 81 |
| 135 | 655 |
| 112a[16] | 556 |

1. CORPORATIONS—*directors and officers—of their dealings with the corporation — trust relation.* The directors and officers of a solvent private corporation are trustees and agents of the company and its stockholders only, and they owe no duty or obligation to creditors which will prevent them from dealing with the company the same as strangers. In such case, the assets of the corporation will not be a trust fund for the payment of its creditors.

2. SAME—*director making loan to corporation—and taking security—rights acquired.* A director or officer of a solvent private corporation may deal with it, loan it money and take security therefor, in like manner as a stranger, and the subsequent insolvency of the corporation will not affect his right of action to recover such loan or enforce his security.

3. SAME — *director as prior mortgagee — implied covenant in junior mortgage—estoppel.* The insertion in a mortgage given by a private corporation to secure bonds issued by it, of the covenant implied from the words "grant, bargain and sell," can not be regarded as a fraudulent representation in respect to then existing incumbrances, on the part of a director of the company who does not sign the mortgage, which will preclude him from claiming the benefit of a prior mortgage held by him on the company.

4. SAME—*release of mortgage to director—by subsequent issue of corporate bonds secured by mortgage.* A director of a corporation holding a mortgage on the corporate property, by voting for the issue of bonds supposed to be enough to pay the corporate debts, and to secure the same by deed of trust on the same property, and who was willing to accept payment of his debt though not yet due, will not thereby waive his priority of lien.

5. In such case, the fact that corporate bonds secured by the new mortgage are placed in the hands of such director holding the prior mortgage, to negotiate, and thus raise money to pay his debt, which bonds he fails to sell, and which he returns to the corporation, will not amount to a satisfaction or release of his prior mortgage, in the absence of any agreement on his part to accept such bonds in payment of his debt.

6. SAME—*bonds and mortgage by corporation—presumption of president's authority.* Where the president and secretary of a corporation

·execute bonds, and a deed of trust securing payment thereof, under the ·corporate seal, this will be *prima facie* evidence that such bonds and ·deed of trust were executed by the authority of the company, without the production of the journal of its proceedings showing a resolution .authorizing such acts.

7. Same—*corporate bonds and mortgage—representations of corporate ·officer—as affecting prior mortgage held by a stockholder or director.* The declarations or representations of the president of a corporation, made in effecting the sale of corporate bonds, that the mortgage securing them constituted the first lien on the property of the corporation, though within the scope of his authority, are not admissible in evidence against a stockholder or director not present when they were made, to affect his interest as a mortgagee of the company under a prior mortgage.

8. Same — *covenants for title—in deed by corporation — upon whom ·binding.* The statutory covenant of warranty implied by the use of the words "grant, bargain and sell," in a deed or mortgage of a corporation, is the covenant of the corporation alone, and not that of the individual ·directors of that body. No action will lie against any of the directors upon a breach of such covenant, the corporation alone being liable.

9. Same—*corporate orders, etc.—of their preservation—presumption.* If a private corporation passes a resolution authorizing its president and ·secretary to execute a deed or mortgage of its property, the natural and legitimate presumption will be, either that a record was made of the same by the secretary in a book containing the proceedings of the corporation, or else that the paper containing such resolution was retained and preserved by the secretary, or both.

10. Agency—*how established.* It is elementary law that an agency ·can not be shown merely by the statements and declarations of the .alleged or supposed agent.

11. Assignment—*in cases of commercial paper—defenses allowable.* Where the assignee of commercial paper, secured by mortgage, seeks relief, in equity, by foreclosure of the mortgage, the mortgagor may .successfully interpose any defense which would have been available .against the original payee or. holder of the paper. But this rule has reference only to equities existing in the original obligor, and not to ° latent equities against the assignee, residing in third persons.

12. Covenants for title—*the words "grant, bargain and sell"—of their effect.* The words "grant, bargain and sell," in a mortgage or deed ·of trust, by a private corporation, securing its issue of bonds, under the .statute, have the effect of a warranty that the lands conveyed or mort-gaged are free and clear of all incumbrances made by the company, and operate as a warranty of the company to the purchasers of the bonds that there is no other mortgage made by it on the property.

13. SECONDARY EVIDENCE—*as to contents of written documents—of the proper foundation.* Where a paper has been shown to have been in particular hands, then the person must be produced into whose hands it has been traced; or, if the natural and legitimate presumption is that it is in certain hands, then it must be proved by legal evidence that it is not there, before secondary evidence of its contents is admissible. The evidence must satisfy the court that the paper is destroyed or can not be found.

14. Search was made in the office of the recorder of deeds for a resolution of the board of directors of a corporation, without success, and it was shown that neither the resolution nor the book containing the record of the proceedings of the board was in the hands of either the receiver who had been appointed to take charge of the affairs of the corporation, or the attorney of the assignee, who had custody of the corporate property prior to the appointment of a receiver, but neither the secretary, president nor assignee of the company was produced as a witness, nor was the deposition of either taken: *Held,* that no proper foundation was laid for the introduction of secondary evidence of the contents of the resolution.

15. NOTICE—*purchaser pendente lite.* A purchaser *pendente lite* is chargeable with notice of the allegations of the bill in respect to the subject matter of the purchase. So when one purchases notes secured by mortgage, pending a bill to postpone the mortgage lien in favor of another lien, he will be chargeable with notice of the rights and equities claimed by the complainant in such bill.

16. *Notice to an agent* of any fact or facts connected with the business in which he is employed, is notice to the principal.

17. RECORDING LAW—*corporate resolutions.* Resolutions adopted by private corporations are not such instruments in writing as are entitled, under the statute, to be recorded in the office of the recorder of deeds.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of Madison county; the Hon. W. H. SNYDER, Judge, presiding.

Julius A. Barnsback, the American Powder Company and Robert Klitzing filed a bill in chancery in the Madison circuit court, and alleged therein the recovery of certain judgments against the Brookside Coal and Coke Company, the execution of certain mortgages charged to be fraudulent, and the insolvency of said coal and coke company. The bill further averred certain rights in Barnsback, as lessor of lands, and charged

42—135 ILL.

fraudulent acts of certain officers of the Brookside Coal and Coke Company, and prayed the appointment of a receiver, the marshaling of assets and the settlement of the affairs of the company, and made the corporation and certain mortgagees, trustees, judgment creditors, and stockholders and officers of the company, parties defendant. It also appeared from the bill that the company had been organized and incorporated in 1880, under the name of "The Brookside Coal Company," but that in 1884 its name had been changed.

Louis Schlosstein filed an intervening petition, and by leave of court filed his answer and cross-bill, in which it was averred, that on the 22d day of September, 1881, the Brookside Coal Company executed three notes to Martin J. Schott,—two for $1665 each, payable, respectively, in one and two years after date, and the other for $1670, payable three years after date, all bearing interest at the rate of eight per cent per annum; that to secure payment of said notes, the said company, on the 19th day of October, 1881, executed a mortgage to Schott on the real estate of said company, and that the mortgage was recorded November 17, 1881; that Schott, for a good and valuable consideration, prior to the maturity of said notes and each of them, assigned to Schlosstein the said notes, whereby he became the legal and equitable holder and owner of them, and averred that the lien of said mortgage is a first and prior lien upon the property described therein.

William H. Krome, trustee in a certain deed of trust, and other persons who were owners of bonds secured thereby, filed answers and a cross-bill. In the cross-bill it was alleged, that on the 17th day of June, 1882, and prior to the date of the judgments obtained by the complainants in the original bill, the Brookside Coal Company, for and in consideration of $15,000 really and in good faith paid to the company, executed and delivered to Ed. B. Huegy thirty bonds, each bearing date June 17, 1882, each for $500, and bearing interest from date at seven per cent per annum, interest to be paid

semi-annually, on June 17 and December 17 of each year, on presentation of coupons thereto attached, at the Mullanphy Savings Bank, St. Louis, Missouri, which bonds provide that in case of non-payment of any half-yearly installment of interest, each should become due, and if such default should continue three months after maturity of said installment, then the principal in such bond should become due,—which bonds were signed by William Freudenau, president, and William Kombrink, secretary, of said company, and countersigned by William H. Krome, trustee, and made payable to Ed. H. Huegy, or bearer, at the Mullanphy Savings Bank, St. Louis, Missouri, on the 17th day of June, 1892, and numbered from 1 to 30, inclusive; that to secure the payment of principal and interest of said bonds, said company, on the 17th day of June, 1882, by its deed of trust, conveyed to William H. Krome, trustee, in trust for the holders of said bonds and coupons, and to secure the same, and the performance of certain other covenants in said deed, certain property in said deed described, it being the interest of the said company in the lands and in the fixtures of such coal mine. It was further averred, that the lien of said deed of trust, and the bonds and coupons thereby secured, was superior to that acquired by complainants in the original bill by virtue of the judgments therein mentioned, or any of them, and further, that it was superior to any lien or judgment, of any kind, in the bill mentioned, and that it was superior and prior to the lien alleged to exist on the property in favor of Louis Schlosstein.

An answer was filed by John Alexander, averring that a mortgage was executed by the corporation to John O. Evans, Sr., of the date of January 21, 1885, recorded, etc., to secure $3500, and such interest as might accrue, according to certificates executed by the company, bearing date January 21, 1885, payable to the order of the said John O. Evans, Sr., or bearer, and numbered from 1 to 178, consecutively, and amounting to $3500, payable, at the option of the company,

at its office at Brookside, with six per cent per annum from date, on or before January 21, 1887; alleging the mortgage is a lien upon the real and personal property in the mortgage described, and that it was made in good faith, and given to secure a *bona fide* indebtedness, and for a valuable consideration, and that he, the defendant, Alexander, is the holder of certificates secured by said mortgage, and naming certain certificates; alleging that he is entitled to the appropriation of the mortgaged property to his certificates, to the exclusion of other creditors, stockholders or parties interested in the mortgaged property; alleging that said claims were also secured by chattel mortgage dated January 25, 1885, duly acknowledged and recorded, and claiming the same to be a valid and first lien on all the personal property, goods and chattels of the company.

The answers of certain judgment creditors of the Brookside Coal and Coke Company showed judgments against the corporation, in amounts and in order of seniority, as follows: Daniel Thomas, transcript filed in the circuit court February 26, 1885, $138.26; a judgment at the February term, 1885, in the county court of Madison county, in favor of the American Powder Company, for $554; and in favor of the same company, for $739.75; judgments in the circuit court of Madison county, for the March term, 1885, in favor of Julius A. Barnsback, for $823.64; Robert Klitzing, for $474.85; Schott and Kombrink, for $4506.10; William Kombrink, for $1767.55; Bryon-Brown Shoe Company, for $83.78; Martin J. Schott, for $2540.80; Martin J. Schott, for $2661.80; E. C. Meacham Arms Company, for $221.65; Evans & Howard, for $476.90; Eli Burke, for $1029; John O. Evans, Sr., for $254.32; Grant Coal Company, for $254.81; Mullanphy Savings Bank, for $62.82; Ed. Zanders, for $208.60; in the circuit court of Madison county, at the October term, 1885, Chris G. Kaufman, for $199.44.

On a motion made in the circuit court, on the coming in of the answers to the original bill and the filing of the cross-bills, a receiver was appointed, and all of the coal shafts, escapement shafts, side-tracks, fixtures, buildings, structures, engines, boilers, machinery, tools, ventilating fans, coke ovens, elevators, coal cars, weighing scales, and all other real and personal property owned and used by the Brookside Coal and Coke Company, were sold by the receiver, under the order of the circuit court, to the Consolidated Coal Company, for $16,000, and at the time of the rendition of the final decree the receiver reported in his hands the sum of $16,148.16.

Otto G. Schott filed a supplemental bill, averring, that since the commencement of the suit he has become the holder for value of the notes in the cross-bill of Louis Schlosstein described, and alleging a priority of the lien of the mortgage to secure the same, and asking a foreclosure of the same. Other defendants filed answers, and certain others were defaulted.

The decree of the court finds the mortgage to Martin J. Schott a first and superior lien, and finds that the notes secured therein were assigned and delivered before maturity to Louis Kammerer, trustee for Louis Schlosstein, for value, and that Otto G. Schott is, and was at the time of filing the supplemental bill, the legal and equitable holder of the notes, he having acquired the interest and title of Schlosstein therein, and that there is due Otto G. Schott on said notes and mortgage $7079.99. The decree then recites the deed of trust to Krome, and finds as to the ownership of bonds secured by such deed of trust, and finds that deed of trust is a second lien upon the property mentioned in the mortgage made to Martin J. Schott, and is subject to the lien first created, but that the Krome mortgage is a first lien on the property therein described and not mentioned in the Schott mortgage, and is a lien upon all the property described in the deed of trust, superior to the lien of the mortgage made to Evans; further finds that the receiver sold all the property covered by the

mortgage and deed of trust, and that there is in his hands the net sum of $16,148.16, realized from such sale after the payment of costs and expenses of sale; further finds that the property covered by the Schott mortgage is worth $10,000; that Otto G. Schott is entitled to receive full payment of the sum of $7079.99 out of said sum of $16,148.16, after the payment of costs, and that the holders of bonds secured by the deed of trust to Krome are entitled to the balance of said sum of $16,148.16 *pro rata,* according to the amounts found due to them, respectively. The several judgments mentioned in the bill, cross-bill and answers, and the mortgage of John O. Evans, Sr., and the chattel mortgage to him, are postponed to the mortgage of Schott and the deed of trust to Krome, and are not entitled to any part of said sum of $16,148.16; and decrees that the receiver pay first the unpaid costs, next, to the solicitor of Otto G. Schott the sum found due him, with interest from the date of the decree, and that he pay the balance of the sum in his hands to bondholders, naming them, *pro rata,* according to the amounts due them, respectively.

Upon appeal to the Appellate Court for the Fourth District the decree of the circuit court was affirmed. From that judgment of affirmance the Mullanphy Savings Bank and William H. Krome, trustee, prosecute this further appeal.

Messrs. KROME & HADLEY, Mr. JOHN G. IRWIN, and Mr. GEORGE F. McNULTY, for the appellants:

The deed of trust and bonds are shown to have been executed by the president and secretary, under the seal of the corporation. This is *prima facie* evidence that it was executed by authority of the corporation, and parties objecting take on themselves the burden of proving that it was not so executed. *Wood* v. *Whelen,* 93 Ill. 153.

Secondary evidence of proceedings of stockholders' meetings, and of resolutions adopted at the directors' meeting, should have been admitted in evidence. When, from the

ownership, nature or object of a paper, it has a proper place of deposit, or where, from the evidence, it is shown to have been in a particular place or in particular hands, then that place must be searched by the witness proving the loss, or the person in whose hands it has been must be produced. . The extent of the search must depend, in a great degree, upon the circumstances of the particular case. The preliminary proof brings us within the ruling of *Rankin* v. *Crow*, 19 Ill. 629.

If directors of a corporation misappropriate or divert any portion of the company's capital, and thereby cause a loss to existing creditors, they would be liable, like any other wrong-doer, to make equitable compensation. This is on the theory that the capital stock is, in equity, a trust fund for the benefit of creditors. Directors are held to the responsibilities of trustees, and must use such diligence as ordinarily prudent men use in their own affairs, and are liable, not only for loss of capital caused by themselves, but by co-directors, where such loss might have been prevented by a proper degree of diligence on their part. Morawetz on Corp. secs. 568, 795.

It was error to exclude representations of the president of the company as to bonds being the first lien, he being agent of the company to negotiate them. Angell & Ames on Corp. secs. 309, 657, 660.

Otto G. Schott occupies no more advantageous position in relation to the first mortgage than Martin J. Schott did before he assigned it. It was subject to all defenses in the hands of the assignee that could have been interposed against the first holder, on bill to foreclose. *Foster* v. *Strong*, 5 Bradw. 223.

Where a person having a mortgage upon an estate, negligently puts it in the power of another to sell or mortgage the property to a third person, who is ignorant of such mortgage or interest, he can not afterward assert his own title in priority to the title of the party whom he has suffered to be deceived. Jones on Mortgages, (3d ed.) 602-604; *Briggs* v. *Jones*, L. R. 10 Eq. 92; *Pickard* v. *Sears*, 6 A. & E. 469.

A mortgagee having other security for the payment of the debt secured by the mortgage, and having notice of a subsequent mortgage upon the same premises, is bound, in equity, to apply, in the first instance, the security, in which the subsequent mortgagee does not share; and if the prior mortgagee, under such circumstances, releases the other security, his mortgage is, to the extent of that security, postponed. Jones on Mortgages, pars. 727, 728; 1 Hilliard on Mortgages, (4th ed.) 325; *Ex parte Kendall,* 17 Ves. 520; *Evertson* v. *Booth,* 19 Johns. 486; *Zeigler* v. *Long,* 2 Watts, 205; *Appeal of Delavan & H. Co.* 2 Wright, 512; *Aldrich* v. *Cooper,* 2 W. & T. 228.

Messrs. WISE & DAVIS, and Messrs. DALE & BRADSHAW, for the appellees:

The assignment of the notes carries the mortgage with it. *Herring* v. *Woodhull,* 29 Ill. 92; *Funk* v. *McReynolds,* 33 id. 481; *Gardner* v. *Diederichs,* 41 id. 158; *Walker* v. *Dement,* 42 id. 272; *Edgerton* v. *Young,* 43 id. 464; *Lock* v. *Fulford,* 52 id. 166; *Petillon* v. *Noble,* 73 id. 567.

The execution of a mortgage under the seal of a corporation and by the properly constituted officers, is *prima facie* evidence the mortgage was executed by the authority of the corporation, and parties objecting take on themselves the burden of proving it was not so executed. *Wood* v. *Whelen,* 93 Ill. 153.

Sections 5 and 6, page 612, of the Revised States, (Curtis' ed.) authorize the corporation to make a mortgage.

A director or stockholder may trade with, borrow from or loan money to the company of which he is a member, on the same terms and in like manner as other persons. *Merrick* v. *Peru Coal Co.* 61 Ill. 472; *Harts* v. *Brown,* 77 id. 226; *Beach* v. *Miller,* 23 Bradw. 154; *Oil Co.* v. *Marbury,* 91 U. S. 587; *Buel* v. *Buckingham,* 16 Iowa, 284.

An assignment by complainant *pendente lite* abates the proceedings until a supplemental bill is filed. *Bonner* v. *Land and Loan Co.* 96 Ill. 548.

The sale of the notes and mortgage under the contract between M. J. Schott and Louis Schlosstein, vested in the latter a good title to the same. *McDowell* v. *Steel Works,* 124 Ill. 497; *Cushman* v. *Hayes,* 46 id. 145; *Loomis* v. *Stave,* 72 id. 623; *Union Trust Co.* v. *Rigdon,* 93 id. 458.

There is no estoppel as against Otto G. Schott. He said and did nothing to create one. Even if M. J. Schott owned the notes and mortgage, there was no estoppel against him either. He did nothing or said nothing which conflicted with or led any one to believe that his mortgage, duly recorded and therefore notice to all purchasers of the bonds, was paid. There being no fraudulent act on his part, that element being absent, there is no equitable estoppel. *Davidson* v. *Young,* 38 Ill. 146; *Powell* v. *Rogers,* 105 id. 322; *Dinet* v. *Eilert,* 13 Bradw. 100.

The recording of the mortgage to Schott was notice to the purchasers of the bonds secured by the trust deed. In *Pratt* v. *Pratt,* 96 Ill. 202, this language is used: "As to the purchase by Worthington & Lyon, this mortgage was on record when they bought and received their conveyances. They were therefore chargeable with notice. Nor does the fact that Russell Grimes (the mortgagor) may have told them it was satisfied, relieve them from its consequences. They should have applied to the holder of the mortgage to learn the truth of the statements. Having failed to do so, they must bear the burden imposed by their want of prudence."

Otto G. Schott being an innocent assignee of the notes secured by the mortgage given by the Brookside Coal Company to Martin J. Schott, holds said mortgage free from all equities, except such as exist between the Brookside Coal Company and Martin J. Schott. *Murray* v. *Sylburn,* 2 J. C. 441; *Olds* v. *Cummings,* 31 Ill. 192; *Barbour* v. *White,* 37 id. 169; *Walker* v. *Dement,* 42 id. 280.

Mr. JUSTICE BAKER delivered the opinion of the Court:

In order of priority in point of time, the liens upon the prop-. erty of the insolvent Brookside Coal and Coke Company are: First, the mortgage of October 19, 1881, to Martin J. Schott; second, the deed of trust of June 17, 1882, to William H. Krome, trustee; third, the mortgage of January 21, 1885, to John O. Evans, Sr.; and fourth, the judgments, according to their seniority of date.

At the time that the mortgage to Martin J. Schott was executed, he was a stockholder and director of the corporation, and its treasurer; but the company was then, and for a considerable time thereafter, entirely solvent, and consequently his interest in and relations to it did not preclude him from loaning money to and taking a mortgage from the company. A director or officer of a solvent corporation may deal with it, loan it money, and take security therefor, in like manner as a stranger. *Beach et al.* v. *Miller*, 130 Ill. 162; *Roseboom et al.* v. *Whittaker et al.* 132 id. 81.

At the hearing, the appellants offered in evidence page 37 of record book 125 of the records of Madison county, for the purpose of showing what purported to be resolutions passed by the directors of the Brookside Coal Company, and authorizing the issue of $15,000 in bonds, and the execution of a mortgage to secure the same. An objection was sustained to the introduction of this testimony, and on the ground that the preliminary evidence produced was not sufficient to authorize the use of secondary evidence. The bonds and the Krome deed of trust were executed by the president and secretary of the corporation, and under its seal, and this was *prima facie* evidence that they were executed by the authority of the company. (*Wood* v. *Whelen*, 93 Ill. 153.) No claim was made that the bonds and deed of trust were unauthorized—in fact, their validity was conceded; but appellants desired to have the resolutions in evidence, in furtherance of their claim that

the Schott notes and mortgage should be postponed, and the deed of trust and bonds given a priority of lien.

Resolutions adopted by private corporations are not such instruments as are entitled, under the statute, to be recorded in the office of the recorder of deeds. Assuming that resolutions were passed that authorized the making of the deed and bonds, the natural and legitimate presumption is, that either a record was made of them by the secretary of the company in the book containing the record of the proceedings of the board of directors, or else that the paper containing such resolutions was retained and preserved by the secretary, or both. If a paper is shown to have been in particular hands, then the person must be produced into whose hands it has been traced; or if the natural and legitimate presumption is that it is in certain hands, then it must be proved by legal evidence that it is not there, before secondary evidence of its contents is admissible. The evidence must satisfy the court that the paper is destroyed or can not be found. (*Mariner* v. *Saunders,* 5 Gilm. 113.) Here it was shown that the resolutions could not be found in the office of the recorder; but in any event, they were only left with him for a temporary purpose, and when they had been recorded, they, presumably, were returned to the possession of the secretary of the corporation. It was further shown that neither they nor the book containing the record of the proceedings of the board of directors were in the hands of either the receiver or of the attorney of the assignee, who had custody of the corporate property prior to the appointment of a receiver; but neither the secretary, president nor assignee of the company was produced as a witness, nor was the deposition of either taken. Although all three were either non-residents or out of the State at the time of the hearing, yet no reason is perceived why their testimony could not have been taken. The record book and resolutions may now be in the hands of either of the three, and yet all the evidence in this record be true. The conviction that naturally arises from

the evidence is, that the record book is in the possession of one or another of them.    There was no error in refusing to admit secondary evidence of the resolutions.

It is claimed that it was error to exclude proof of representations made by Freudenau, president of the company, to Kammerer, cashier of the Mullanphy Savings Bank, at the time some of the bonds were pledged to the bank, that they were a first lien upon the property described in the deed of trust.    The representations were made in the summer or fall of 1883, nearly two years after Martin J. Schott had taken his mortgage, and in the absence of said Schott.    If it should be assumed that the declarations of Freudenau were within the scope of his agency to negotiate the bonds for the corporation, and therefore binding upon said Schott to the extent of his interest as a stockholder therein, yet it would seem that in respect to the rights which he held adversely to the corporation, and as its mortgagee, such declarations would not be competent testimony.    And if such representations were not admissible against him as mortgagee, then, as matter of course, they were not admissible against his assignee, who was complainant in the supplemental bill, and is appellee here.

It is urged that if Martin J. Schott agreed to accept payment before his money was due, and out of moneys to be obtained by the sale of second mortgage bonds, then the declarations of Freudenau were competent and relevant testimony in the contention for priority between the first and second mortgages. This argument proceeds upon the theory of agency; but suffice it, in this connection, to say, that it is elementary law that an agency can not be shown by the statements of the supposed agent.

Preliminary to a consideration of the merits of the controversy between appellants and appellee, it may be well enough to ascertain the *status* of the latter in respect to the equities claimed by the former.    It is settled law, announced in *Chicago, Danville and Vincennes Ry. Co.* v. *Loewenthal,* 93 Ill. 433, and

in many other cases, that when the assignee of commercial paper secured by mortgage, seeks relief in equity by foreclosure of the mortgage, the mortgagor may successfully interpose any defense which would have been available against the original payee or holder of the paper. This rule, however, has reference only to equities existing in the original obligor, and not to latent equities against the assignor residing in third persons. (*Olds* v. *Cummings,* 31 Ill. 188; *Walker* v. *Dement,* 42 id. 272; *Silverman* v. *Bullock et al.* 98 id. 11.) In the case last cited the statement is, that the assignee takes subject only to equities existing in favor of the mortgagor, as against the assignor, and not subject to latent equities in favor of third persons in the subject involved in the assignment, of which he had no notice. This brings us to the point that appellee, at and prior to the time that he purchased the mortgage debt and took an assignment of the notes and mortgage of September 22, 1881, had notice, in at least two several ways, of the equities, if any, existing in favor of the trustee and bondholders under the deed of trust, and the mortgagee in said mortgage of 1881. In the first place, before that time the trustee and bondholders under the trust deed of 1882 had filed their cross-bill, wherein they claimed that the lien of said deed of trust was superior to the lien alleged to exist on the property by virtue of the mortgage of 1881. Appellee, being a purchaser *pendente lite,* was chargeable with notice of the allegations of this cross-bill. Besides this, the evidence is clear and undisputed that the notes and mortgage were purchased for appellee, and assignments taken to him, by Martin J. Schott, who was acting as his authorized agent in the matter. The doctrine is, that notice to an agent of any fact or facts connected with the business in which he is employed, is notice to the principal. (*Singer Manf. Co.* v. *Holdfodt,* 86 Ill. 455; *Flower et al.* v. *Elwood et al.* 66 id. 438.) Martin J. Schott, as matter of course, had full knowledge of all that had transpired between himself and either the corporation, the

trustee in the trust deed, or the holders of bonds secured by the same, in respect to both the mortgage given to him and the trust deed, and appellee stands in the shoes of Martin J. Schott, the mortgagee, and holds the mortgage of 1881 subject to all the equities, if any there be, existing in favor of the trustee and bondholders as against said Martin J. Schott. Does any matter appear in the record which would estop Martin J. Schott from claiming that the mortgage to him is the first and superior lien upon the property of the coal and coke company?

It is insisted that it was the intention of the corporation and of said Schott, and that there was an agreement between them to the effect, that the deed of trust should be made a first lien upon the property, and that this should be accomplished by Schott accepting payment of his mortgage debt before it was due, and such payment to be made out of moneys to be obtained by sale of second mortgage bonds. It is not claimed that there is any direct proof whatever of such a contract. Nothing appears upon the face of the bonds to indicate that they either were or were intended to be first mortgage bonds, or secured by a first lien upon the mortgaged property. The only thing contained in the deed of trust that is suggested as amounting to a representation of priority, is the fact that the words "grant, bargain and sell" are used therein. These words are, under the statute, a warranty of the company that the lands conveyed and mortgaged were free and clear of all incumbrances made by the company, and a warranty of the company to the purchasers of the bonds that there was no other mortgage made by it on the property. But the covenants were the covenants of the corporation alone, and not the covenants of the individual directors of the corporation, and no suit could be brought for breach of such covenants against any of the directors. From the fact of the insertion of a covenant against incumbrances, an implication arose of the probability or possibility that there were prior incumbrances,

for otherwise there was no occasion for furnishing a remedy by way of an action for breach of covenant. The deed was not signed by Schott, but was executed by Freudenau, president, in the name of the company, and attested by Kombrink, secretary, and the incorporation therein of the covenant implied from the words "grant, bargain and sell," can not be regarded as a fraudulent representation on the part of Schott, one of the directors of the company, that would preclude him from claiming the benefit of the prior mortgage held by him.

It appears from the evidence that late in May or early in June, 1882, there was a meeting of the stockholders of the Brookside Coal Company, at which Freudenau, its president, Schott, and others, were present; that Freudenau made a statement of its financial condition, in the presence and hearing of Schott, in which he summed up its indebtedness, stating its total to be between $14,000 and $15,000, including the notes and mortgage of Schott; that he suggested that a loan of $15,000 was sufficient to pay all the debts of the company, including the Schott mortgage, and stated that it would be for the interests of the company to issue bonds to the amount of $15,000, and execute a mortgage security, for the purpose of raising money to pay off the total indebtedness of the company. From the circumstance that Schott made no response or objection to these suggestions, and from the further circumstance that appears from the recitals in the deed of trust, that the bonds were issued "in pursuance of a vote of all the directors of said company," it may be inferred that Schott was willing to receive payment of his debt prior to its maturity, but it can not be justly deduced therefrom that he consented to waive his priority of lien without payment, in money, of such debt.

It seems that the board of directors of the company consisted of three members,—Freudenau, the president, Kombrink, the secretary, who was his brother-in-law, and Schott, the treasurer; that the two former managed its business affairs, and

that Schott was treasurer only in name, neither the proceeds of the bonds nor the other funds of the company passing through his hands.

In the latter part of 1882, ten of the bonds secured by the deed of trust, and of the face value of $5000, were delivered to Schott, and it is claimed that as he received the same he is thereby estopped from saying that they were not in satisfaction of his debt and in discharge of his mortgage lien. The notes and mortgage of 1881 were not surrendered to the company, but have been continously retained and held by Schott and his assignees. We think that the evidence satisfactorily shows that Schott did not accept the bonds in payment of his debt, but that the conditional arrangement between him and Freudenau was, that he should take the bonds and try to sell them to a bank in Highland that held a note against him, and that if he sold them he was to surrender his note and mortgage to Freudenau, and receive from him the unpaid interest, and that if he did not sell them they were to be returned to Freudenau; that the bank declined to buy because the bonds bore only seven per cent interest, while Schott's note bore eight per cent interest, and because it wanted nothing to do with coal mines; and that thereupon some of the bonds were given back to Freudenau, and some delivered to the Mullanphy Bank on the order of Freudenau, and that all ten of the bonds were, after their return, negotiated and disposed of for the Brookside Coal Company, by Freudenau. It does not appear that any of the proceeds of the bonds were used for other than corporate purposes.

. The transactions above mentioned took place in 1881, 1882 and 1883. It is not shown that in 1881, 1882 or 1883 the Brookside company was insolvent. Schott, therefore, in those years, as director and treasurer of the corporation, was trustee and agent of the company and its stockholders, only. He at that time owed no duties or obligations to appellants or to the creditors that would have prevented him from dealing as he

did with the company and with the bonds. The assets of the corporation were not then a trust fund for the payment of its creditors. (*Beach et al.* v. *Miller,* 130 Ill. 162; *Roseboom et al.* v. *Whittaker et al.* 132 id. 81.) Schott did not appropriate the money or bonds of the company to his own use. He simply retained his notes and mortgage, which were a first lien upon property of the company, and he had a right so to do. It may be that in 1882 and 1883 he was negligent in the performance of his duties as director and treasurer, in not seeing that the one-fourth of one cent per bushel on all coal mined was paid to the trustee, as a further security, as provided in the deed of trust, and otherwise, but the pleadings in the cause did not proceed upon any such ground; and besides this, the trustee in the deed of trust and the bondholders were guilty of like negligence. Moreover, the trustee had actual notice of Schott's mortgage, and the bondholders had constructive notice of the same from the public records. The bondholders neglected to examine the records, and neither they nor the trustee made inquiries of Schott in regard to his mortgage. In view of the greater negligence of appellants, it would seem inequitable and unjust, even if the nature of the case and character of the pleadings permitted, that appellants should shift the burden of the loss either to the shoulders of Martin J. Schott or of appellee.

We find no sufficient ground for disturbing the decree of the circuit court. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*