Taylor *v.* Kneeland.

## ORESTES TAYLOR *v.* LORENZO P. KNEELAND.

Douglass.
1d 67
73 422

1d 67,
102 196

1d 67
115 685

1d 67
143 ⁵434

A count in slander, alledging that the defendant uttered and published that the plaintiff, who was postmaster at F., *embezzled certain papers,* is not supported by proof that he said *he had no doubt but that the papers were embezzled at F.,* or, that *he thought the papers were embezzled at the postoffice at F.*

A declaration in slander contained the usual inducement, without the averment of any extrinsic facts or circumstances, showing the actionable quality of the words spoken, except, that the plaintiff was postmaster at F., and the third count charged the defendant with having spoken and published, of and concerning the plaintiff, as postmaster, &c. that *"He did not think Marlatt's resignation or his petition had gone to Washington, he had no doubt they were embezzled at F.,"* adding, by innuendo, ("at the postoffice at F.* of which the plaintiff was postmaster, meaning,) meaning and intending thereby, that the plaintiff had delayed and prevented the transmission of the said resignation and petition, to the Postmaster General at Washington," &c. *Held,* that the count was fatally defective, the words charged to have been spoken and published not appearing to be actionable.

The words were not actionable *per se,* nor were they made so by the averment that the plaintiff was postmaster at F., since, if true, the charge they contained, would not subject the plaintiff to an indictment for a crime involving moral turpitude, or to an infamous punishment. They would, however, have become actionable, had the inducement of the declaration further averred, that the letters or papers referred to, were placed in the postoffice at F., or entrusted to the care of the defendant as postmaster at F., or were passed through the said postoffice, to their place of destination, since the embezzlement, by the defendant, of papers which so came into his possession, is made criminal, and punishable by fine or imprisonment by an act of Congress.

Extrinsic facts or circumstances showing the actionable quality of words, not actionable *per se,* must be directly averred in the *inducement* of the declaration.

The office of an *innuendo,* is merely to apply the different parts of the charge contained in the words, to the different facts before averred in the inducement. Its truth must always appear from precedent averments, and it must be supported by the *inducement* and *colloquium.*

The omission of any averment, in a count in slander, that the defendant *maliciously* published the matter alleged, is cured by verdict, although it would be fatal on special demurrer.

Words spoken by the defendant, after the commencement of the suit, are not admis-

sible in evidence, to show malice, in an action of slander, unless they expressly refer to those which are the subject matter of the action, and do not constitute a distinct calumny for which the plaintiff would have a separate right of action.

~ ERROR to the Oakland Circuit Court. This was an action of slander tried before Hon. CHAS. W. WHIPPLE, Presiding Judge. The facts fully appear in the opinion of the Court.

*Geo. W. Wisner*, for plaintiff in error.

*J. B. Hunt* and *S. G. Watson*, for defendant in error.

MORELL, C. J. delivered the opinion of the Court.

This is an action of slander brought by the defendant in error, against the plaintiff in error, for slanderous words alleged to have been spoken by the defendant below in relation to the conduct and behavior of the plaintiff below, in the discharge and exercise of his office of postmaster. The declaration contains the common inducement, without averring any extrinsic matter or circumstances, showing the actionable quality of the words, except averring that the plaintiff was postmaster at Farmington, &c. It then alleges that the "said Orestes Taylor, well knowing the premises, and contriving, &c. heretofore, to wit, on the first day of January, 1840, at Farmington, in the county of Oakland, in a certain discourse which the said Orestes then and there had with one George Brownell, and divers other citizens of this state, *uttered and published,* of and concerning the said Lorenzo P. Kneeland, and of and concerning his conduct and behavior in the discharge and exercise of his office of postmaster, in the presence and hearing of the said last mentioned citizens, these false, scandalous, malicious and defamatory words, that is to say," (innuendos omitted,) " Corruption is the order of the day. I do not believe Marlatt's resignation as postmaster, and the petition for me, ever reached Washington. Knee-

land embezzled those papers: I have no doubt the papers were embezzled at Farmington: he could easily find out that those were the right ones. It was easy enough done: there would be no difficulty in his finding out. He embezzles letters. He steals letters. He breaks open letters."

The second count charges Taylor with having *spoken and published*, of and concerning the said Kneeland, as such postmaster, these false, scandalous, malicious and defamatory words: To the inquiry, "Do you think that Kneeland embezzled those papers?" He replied: "I have no doubt the papers were embezzled at Farmington." And to the inquiry, "How could Kneeland know those papers from others directed to Washington?" He replied, "He could easy find out. It was easy enough done. There would be no difficulty in his finding out."

The third count charges the defendant with having spoken and published the following words: "He did not think Marlatt's resignation, or his petition, had gone to Washington. He had no doubt but they were embezzled at Farmington."

It appears from the bill of exceptions taken in this cause, that the plaintiff below, after having proved that he was a postmaster in the town of Farmington, called George Brownell as a witness, who testified that he had a conversation with the defendant soon after he, the witness, had been appointed postmaster in that part of the town. The defendant said, in respect to his petition, that he did not think it had gone to Washington; that the petition and resignation went on together, and he did not think either of them had gone to Washington. Neither Marlatt's resignation, nor his petition, had gone as directed. Witness replied he thought it must have gone, or that the other appointments would not have been made. Defendant replied, he did not think the papers had gone far. Witness said, he did not know how any one could find it out. Defendant

said it was easy enough to find that out.   "I have no doubt but that the papers were embezzled at Farmington."   Witness told defendant he thought he was making a serious charge, and asked him if he thought Kneeland had taken the papers.   The witness did not recollect that he mentioned Kneeland's name, but said he thought the papers were embezzled at the postoffice at Farmington.   That, on the same day, and in the course of an hour or two afterwards, witness had another conversation with the defendant, in which he asked the defendant if he really believed said papers were stopped at the postoffice at Farmington.   The defendant said he had no doubt of it.

Charles Brownell, a witness called by the plaintiff, testified that he heard defendant say, "he had no kind of doubt but that Marlatt's resignation and his petition, were embezzled at Farmington," and thinks he said, " embezzled at the postoffice at Farmington."

The plaintiff then called a witness to prove slanderous words uttered after the commencement of the suit, in aggravation of damages.   The defendant objected to the introduction of this testimony, which objection was overruled by the Court, and the testimony admitted.   To this decision the defendant excepted.

The plaintiff having closed his case, the defendant moved for a nonsuit, alleging as reasons,

1.  The words proved were not actionable *per se*, and, as the declaration contained  no *colloquium*, showing that there had been a petition placed in the postoffice at Farmington, and no prefatory  statement of any particular subject matter to which the alleged slanderous words referred, the plaintiff, under the testimony adduced, could not sustain his action.

2.  A part of the words alleged in the  declaration were not actionable, without an averment, and proof, of special damage; and, although *that part of the words* alleged might

Taylor *v.* Kneeland.

be proved, yet the plaintiff could not sustain his case without proving particularly, *that part of the words alleged* which were actionable *per se.*

3. There was a variance between the *words proved*, and the actionable words alleged in the declaration.

The Court overruled the motion for a nonsuit. To this also the defendant excepted.

The testimony being closed, the defendant asked the Court to charge the jury,

1. That a part of the words charged in the declaration were not actionable.

2. If there was a variance between the *words proved* and that part of the words charged which was actionable, they must find for the defendant.

The Court refused so to charge the jury, and they found a general verdict for the plaintiff, for twenty dollars.

The defendant then moved to arrest the judgment, for reasons appearing upon the record. The Court overruled the motion, and to all these decisions the defendant excepted.

There are a number of grounds of error assigned, some arising *dehors* the record, and some upon the record itself. But it will not be necessary to examine all of them, in order to arrive at a correct decision.

I shall first examine whether there was a variance between the *words proved*, and that part of the words charged which were actionable *per se;* and whether the Court erred in refusing so to charge the jury. The first count charges the defendant with having spoken these words : " Corruption is the order of the day. I do not believe Marlatt's resignation as postmaster, and the petition for me, ever reached Washington. Kneeland embezzled those papers. I have no doubt the papers were embezzled at Farmington," &c. " He embezzles letters. He steals letters. He breaks open letters."

Now, the proof does not sustain this count; for, although I am willing to admit, that "corruption is the order of the day," and that the Court below viewed this charge as one of those self-evident propositions which require no proof to sustain them, still, it no where appears that the defendant ever made the declaration, neither does it appear, that he ever charged Kneeland with embezzling those papers. There was, then, a variance between the proof and the charge in the first count; so there is in respect to the second count.

But the words as charged in the third count, are substantially proved. The question then arises upon the record, whether these words are actionable *per se*, or whether they can be made so by reference to any other part of the record.

Johnson and Walker define the word embezzle, to mean, "to appropriate by breach of trust;" and Webster defines it, "to appropriate fraudulently to one's own use what is entrusted to one's care and management." It differs from stealing and robbery in this, that the latter imply a wrongful taking of another's goods, but embezzlement denotes the wrongful appropriation and use of what came into possession rightfully. And so it has been held, that words charging a person with the embezzlement of goods, are not actionable; (Stark. on Sl. 13, *n.* 6;) because the charge, if true, will not subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment. 5 John. R. 188, 191.

But, although these words are not actionable, when spoken in relation to a private citizen, still, they may become so, by virtue of certain statutory provisions, when spoken of a public officer. The Postoffice Laws U. S. p. 12, § 21, enact, "that, if any person employed in any of the departments of the Postoffice establishment, shall unlawfully

detain, delay, or open, any letter, packet, bag, or mail of letters, with which he shall be entrusted, or which shall come to his possession, and which are intended to be conveyed by post: or, if such person shall secrete, embezzle, or destroy any letter or packet entrusted to such person as aforesaid, and which shall not contain any security for, or assurance relating to, money, every such offender being thereof duly convicted, shall, for every such offence, be fined not exceeding $300, or imprisoned not exceeding six months, or both, according to the circumstances and aggravation of the offence."

The third count charges the defendant with having spoken and published, of and concerning the plaintiff as postmaster, &c. the following words: "He did not think Marlatt's resignation, or his petition, had gone to Washington. He had no doubt they were embezzled at Farmington, *innuendo*, (at the postoffice at Farmington, of which the said Lorenzo P. Kneeland was postmaster, meaning,) and meaning and intending thereby, that the said Lorenzo P. Kneeland had delayed, and prevented the transmission of the said resignation and petition, to the Postmaster General at Washington, for the purpose of defeating the appointment of the said Orestes Taylor as postmaster, and that the said Lorenzo P. Kneeland had, corruptly, and against his duty as postmaster, conveyed, disposed of, and embezzled the said letters and papers, placed in said office, or passing through said office, to their place of destination."

Has the plaintiff alleged any thing in the inducement to warrant this innuendo? Here the actionable quality of of the words arises from *extrinsic* circumstances, and Starkie says, those circumstances must appear, and that the method of putting them upon record is, 1. By an introductory part, or inducement, and stating them by averment. 2. By a *colloquium*, connecting them with the

libel, or slander, as by saying that the words were spoken " of and concerning," the extrinsic facts so averred in the inducement.    3. By an innuendo, applying the different parts of the charge to the different facts before averred and set forth in the inducement.    Stark. on Sl. 290.

The innuendo, therefore, can do nothing more than refer back to some facts stated in the inducement.    For, the truth of an innuendo must always appear from precedent averments, 7 John. R. 272; and the inducement and *colloquium* must warrant the innuendo.    Now, there is no averment in the inducement, that any letters or papers referred to in the innuendo, were ever placed in the post-office at Farmington, or entrusted to the care of the post-master at Farmington, or that they ever passed through said office to their place of destination, and without such averment, there is nothing to sustain the innuendo.    The declaration is, therefore, bad; for the offence, as charged, is not actionable.

There are other exceptions taken, which, although not necessary to be examined in deciding this case, it may be deemed advisable to notice.

One ground is, that there is no averment that the defendant *maliciously* published the matter.    This objection would be good on special demurrer, but is cured by verdict.    Stark. on Sl. 433 ; 1 East. R. 563; 1 Saund. R. 242, *a.*

Another objection is, that the Court admitted evidence to prove slanderous words uttered after the commencement of the suit, in aggravation of damages.

What the words offered to be proved were, does not appear from the bill of exceptions.    Starkie lays down this general proposition, that " for the purpose of proving malice, it seems that any acts or words used by the defendant, tending to prove a malignant and malicious intention towards the plaintiff, are admissible in evidence, although the words so given in evidence be in themselves actiona-

ble, and are not specified in the declaration, and although they were spoken subsequently to the words declared upon." 2 Stark. Ev. 465.

Although Starkie lays down the doctrine in these general terms, still, he is not supported by the cases which he cites to sustain it, and it must be taken with certain limitations and restrictions. Thus it is said, that after proving the words laid in the declaration, the plaintiff may give in evidence other words not actionable, to show malice in the defendant. *Wallis* v. *Mease,* 3 Binn. R. 550; *Eccles* v. *Schackleford,* 1 Litt. R. 35. Also, actionable words spoken after the suit brought. 3 Binn. R. 550; *Kean* v. *McLaughlin,* 2 Serg. & Rawle R. 469; *Shock* v. *McChesney,* 2 Yeates R. 473. So, the plaintiff may give in evidence the speaking by the defendant of the same words after the suit brought. *Miller* v. *Kerr,* 2 McCord R. 285.

In *Thomas* v. *Croswell,* 7 John. R. 264, *Spencer,* C. J. says, it is improper to suffer distinct libellous matter, subsequent to that charged in the declaration, to be given in evidence, to show the intent with which the matter charged was published. And, in Tennessee, evidence of words spoken after suit brought, is not admissible: *secus* as to words spoken before, though not declared on. *Howell* v. *Cheatham,* Cooke's R. 248. But the Supreme Court of Massachusetts, in a late case, after remarking that it was a difficult question, adopted the rule laid down by Phillips, 2 Phil. Ev. 247, Cow. & Hill's ed. "that the subsequent words or libels offered in evidence, did expressly refer to those which were the subject of the action," and that, therefore, a distinct calumny for which the party had a right of action, was inadmissible. *Bodwell* v. *Swan,* 3 Pick. R. 376. And this is in accordance with the doctrine laid down by C. J. *Mansfield,* that a repetition of the same words, or the same libel, may be proved to show

that the first was not heedless but malicious.  "And we think so far we may go; but we cannot agree, that, if a man sue another for calling him a thief, he may prove that at another time afterwards he also called him a murderer. This is a distinct calumny, for which the plaintiff has a right to his action, and although it may serve to prove malice as to the first words, so also, it will necessarily go to enhance the damages; for no jury can show how much or how little damages were given on account of his second charge."   3 Pick. R. 376.

I think, therefore, that the most reasonable rule which can be adopted, is that laid down in Phillips, and adopted in Massachusetts, that the subsequent words or libels offered in evidence, should expressly refer to those which were the subject of the action, and that a distinct calumny, for which the party would have a right of action, would be inadmissible.

Whether the slanderous words, which were uttered in this case after the commencement of the suit, and which were given in evidence, came within this rule, we cannot say, as the words are not set out in the bill of exceptions.

WHIPPLE, J. having presided on the trial of the cause in the Court below, did not participate in the decision.

*Judgment reversed and nonsuit ordered.*