ROBERT VICKERS v. EDMUND STONEMAN.

*Libel and slander—Pleading—Declaration—Innuendo—Evidence.*

1. A slander once barred cannot be revived by an admission that it had formerly been made, nor can malice be attached to such an admission fished out for the purpose of renewing it.

2. The testimony of ministers who in their ministerial office draw forth from a party statements of an ancient transaction, which is made the ground of a slander suit, is inadmissible to show publication of the slander, and is, moreover, privileged.

3. In this case the majority of the Court hold that the declaration sufficiently charges defendant with having charged plaintiff with the criminal poisoning of defendant's cattle.

Error to Van Buren. (Buck, J.) Argued October 16, 1888. Decided January 25, 1889.

Case for slander. Defendant brings error. Reversed. The facts are stated in the opinion.

*John I. Breck, Howard & Roos,* and *B. F. Heckert,* for appellant.

*Hilton & Chandler (L. A. Tabor,* of counsel), for plaintiff.

CHAMPLIN, J. This is an action on the case to recover damages for verbal slander. The declaration contains no matters of inducement, and no averment of collateral circumstances, but proceeds in two counts to set out the cause of action, as follows:

"On February 20, A. D. 1887, at Waverly, in the county of Van Buren aforesaid, in a certain discourse which the said defendant then and there had with the said plaintiff, in the presence and hearing of divers good and worthy persons, did speak, publish, and declare, to,

of, and concerning the said plaintiff these false, scandalous, and defamatory words, to wit:

" 'He (meaning the said plaintiff) poisoned my cattle; they were poisoned with Paris green; they were poisoned from a pail that had bran and poison in it, and Vickers (meaning the said plaintiff) put it there.' "

" Thereby meaning and intending to charge that he, the said plaintiff, committed the crime of willfully and maliciously administering poison to the cattle of him, the said defendant, Edmund Stoneman, whereby the said cattle were poisoned and killed

"And whereas, also, the said defendant, with malice towards the said plaintiff aforesaid, afterwards, to wit, on the same day and year, and at the same place aforesaid, in a certain other discourse which the said defendant then and there had, in the presence and hearing of divers other good people, of and concerning the said plaintiff, did falsely and maliciously speak, publish, and declare, in the presence and hearing of those people, these other false, scandalous, malicious, and defamatory words, of and concerning the said plaintiff, to wit:

" ' He (meaning the said plaintiff) poisoned my cattle; they were poisoned with Paris green; they were poisoned from a pail that had bran and poison in it, and Vickers (meaning the said plaintiff) put it there.'

" Thereby meaning and intending to charge that he, said plaintiff, committed the crime of willfully and maliciously administering poison to the cattle of him, the said defendant, whereby the said cattle were poisoned and killed.

" By reason of the speaking, publishing, and uttering of which said false, scandalous, malicious, and defamatory words the said plaintiff is greatly prejudiced in his good name, fame, and reputation."

Then follows the claim for general damages. The plea was the general issue.

Upon the trial, the plaintiff having produced a witness by whom he proposed to prove the slanderous words, the defendant's counsel objected, for the reason that it was irrelevant and inadmissible under the pleadings; that the declaration sets out no cause of action, because the words

charged in the declaration do not amount to a charge of crime, and are not actionable *per se,* and no special damages are claimed. The circuit judge overruled the objection and admitted the testimony. This is one of the main grounds of error relied on.

The words laid in the declaration as slanderous are not actionable in themselves. They do not charge a crime, as the statute requires the poisoning to be done willfully and maliciously in order to punish it as a felony. But the pleader seeks to bring the words charged within the offense created by the statute by the use of an *innuendo,* the office of which is to explain doubtful words and phrases, and annex to them their proper meaning. It is, however, well settled that an *innuendo* cannot extend the sense of the words · used beyond their natural meaning, unless something is put upon the record by way of introductory matter, with which they can be connected; in which case, words which are equivocal, or ambiguous, or fall short in their natural sense of stating a slanderous charge, may have fixed to them a meaning extending beyond their ordinary import, which renders them certain or defamatory by means of a proper *innuendo.* In this declaration there is nothing of an introductory character explaining the occasion, or stating circumstances which would connect the slanderous words with the relation of the parties, or the situation of the subject-matter, showing in what connection the slanderous words were used, and so by the use of the *innuendo* make their meaning certain. Thus it is laid down in 1 Chit. Pl. p. 422, in speaking of the office of the *innuendo*:

"It is only explanatory of some matter already expressed; it serves to *point out,* where there is precedent matter; but never for a new charge; it may *apply* what is already *expressed,* but cannot add to, or enlarge, or change the sense of the previous words."

It is also laid down in Starkie on Slander, at page 421, that—

"The most important rule of law relating to this species of averment is that its office is merely to explain by pointing out the defendant's allusion, and that it can in no case be allowed to introduce new matter; and the reason for this is a most substantial one, for were it otherwise there would be no sufficient and distinct averment of the existence of those facts which in point of law are essential to render the words actionable."

And after giving illustrations from adjudicated cases, upon page 422, this author says:

"An innuendo, therefore, cannot extend the sense of the words beyond their own meaning, unless something be put upon the record for it to explain."

In this case it is the innuendo alone which charges the crime. It extends the meaning of the words used beyond their own import, and is directly within the decision of *Holt v. Scholefield,* 6 Term R. 691. And to the same effect are *Van Vechten v. Hopkins,* 5 Johns. 220; *M'Claughry v. Wetmore,* 6 Id. 83; *Thomas v. Croswell,* 7 Id. 271; *Andrews v. Woodmansee,* 15 Wend. 232; *Miller v. Maxwell,* 16 Id. 1; *Vaughan v. Havens,* 8 Johns. 109; *Beardsley v. Tappan,* 1 Blatchf. 588; *Patterson v. Edwards,* 7 Ill. 720; *Cramer v. Noonan,* 4 Wis. 231; *Taylor v. Kneeland,* 1 Doug. 67; *Bourreseau v. Journal Co.,* 63 Mich. 430 (30 N. W. Rep. 376), per MORSE, J. In Massachusetts, a more liberal rule of pleading prevails in actions of libel and slander, and in England, under the common-law procedure act of 1852 (15 & 16 Vict. chap. 76), the declaration in this case would have been good. But under our practice the rules of pleading remain the same as they were in 1855; and under the decision of this Court then made in *Lewis v. Soule,* 3 Mich. 514, the declaration in this case is bad, and the objection to the introduction of testimony under it ought to have been

sustained.   As this disposes of the case at the present time, we do not think it advisable to discuss the other errors assigned.

The judgment will be reversed, and a new trial ordered.

LONG, J., concurred with CHAMPLIN, J.

CAMPBELL, J.   I agree that the judgment should be reversed.   The alleged slander in this case is charged to have been spoken in December, 1886, or January, 1887, and consisted in a statement by defendant, Stoneman, that Vickers had poisoned Stoneman's cattle some 10 or 11 years before, when the first charge was made, as is not disputed.   One McFarlin, on whose testimony the plaintiff relied, testified to an interview with defendant in which McFarlin himself introduced the subject, and did so at plaintiff's suggestion, for the express purpose of drawing out remarks from defendant on the subject, and succeeded in doing so.   Another witness, Mr. Armstrong, testified to a conversation three or four years earlier, and drawn out by his own questions in a religious conversation with Stoneman, whom he was trying to interest in religious matters, being engaged in a revival.   One Travis was introduced to show slanderous statements to the same effect made long enough ago to have been barred several years.   One O. S. Paddock, a minister, who visited defendant in that capacity, related conversations directly connected with defendant's religious experiences.   Other testimony was introduced going back beyond the statutory period, as well as beyond the time declared on.

The defendant introduced testimony tending to prove the truth of the alleged slander, and denied that he had within the statutory period stated any more than his belief that Vickers poisoned his cattle; that not being the form of accusation charged in the declaration.   There

was also considerable testimony bearing collaterally on the relations of the parties. This abstract will sufficiently explain the bearing of the majority opinion.

The testimony of ministers who in their ministerial office drew forth from defendant statements of the ancient transaction which was the ground of suit was not, I think, admissible to show publication of the slander, and was, moreover, privileged.

Neither do I think that a slander once barred can be revived by an admission that it had formerly been made, or that malice can be attached to such an admission fished out for the purpose of renewing it.

I do not think that with the innuendo there was any difficulty in allowing the charge made of poisoning the defendant's cattle in the way pointed out as meaning a criminal poisoning. No other intentional poisoning could be innocent, and such would be a natural inference from that accusation.

SHERWOOD, C. J., and MORSE, J., concurred with CAMPBELL, J.