## W. B. Conkey Company v. Oscar Goldman, Administrator.

### Gen. No. 12,135.

1. CORPORATION—*what sufficient sealing by.* A scroll may be adopted and used by a corporation as its seal in the execution of a legal instrument upon which a seal is designed to be used.

2. EXECUTION—*what sufficient proof of, by corporation.* Where the execution by the corporation of an instrument in suit is denied by verified plea, all other proof having been made, it is not essential that proof of the authority of the executing officer be shown, if the corporation, being the party denying such execution, has acted under the instrument in question and has thus recognized its existence.

3. APPRENTICESHIP—*what breach of contract of.* The removal by a master of his entire plant from the State in which the contract of apprenticeship was made and contemplated to be performed to

another State, is a breach of such contract for which damages may be recovered rendered in an action of covenant.

Action of covenant. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed December 4, 1905. Rehearing denied December 14, 1905.

NEWMAN, NORTHRUP, LEVINSON & BECKER and C. E. CLEVELAND, for appellant.

HOFHEIMER & LEVINSON and ADOLPH D. WEINER, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

William Goldman sued appellant in covenant. He died pending the suit, and appellee, his administrator, was substituted as plaintiff, and recovered judgment for the sum of $382.61.

The suit was brought on the following instrument:

"ARTICLES OF AGREEMENT entered into between the W. B. Conkey Company, of Chicago, Cook County, and Wm. Goldman and Charles Goldman, minor.

This Indenture Witnesseth that William Goldman, of the County of Cook, State of Illinois, has voluntarily, of his own free will and accord, put and bound Charles Goldman, his son, apprentice to W. B. Conkey Company of the City of Chicago, County of Cook, State of Illinois, to learn the art and trade of book binder and as apprentice to serve from this date for and during and until the full end and term of four years next ensuing; during all which time the said apprentice shall serve his masters faithfully, honestly and industriously, their secrets keep and all lawful commands readily obey, and to demean himself in a modest, courteous and accommodating manner towards his masters and all other persons employed in and about the premises and business of his said masters; at all times protect and preserve the goods and property of his said masters, and not suffer any to be wasted or injured; and, it being the custom in said business to work at least ten hours per day, the

said apprentice shall also employ himself in and about the premises of his said masters during the time of at least ten hours per day during the full term of his apprenticeship.

And the said masters shall use and employ the utmost of their endeavors to teach, or cause him, the said apprentice, to be taught or instructed in the art and trade of book binder.

And the said W. B. Conkey Company further agree to pay the said Charles Goldman the following sums of money, viz: For the first year of his service the sum of 6 mos. $5.00, 6 mos. $6.00 Dollars per week; for the second year of his service the sum of 6 mos. $7.00, 6 mos. $8.00 Dollars per week; for the third year of his service the sum of 6 mos. $9.00, 6 mos. $10.00 Dollars per week, and for the fourth year of his service the sum of 6 mos. $11.00, 6 mos. $12.00 Dollars per week, payable at the expiration of each week of actual work.

AND IT IS FURTHER AGREED, That in case the said Charles Goldman fully and satisfactorily performs his duties as set forth in this contract, the said W. B. Conkey Company will pay him at the expiration of this contract the sum of Fifty ($50.00) Dollars as a bonus for the true and faithful discharge of his obligations.

IN WITNESS WHEREOF, The parties aforesaid have hereunto set their hands and seal this 14th day of January, in the year of our Lord one thousand eight hundred and ninety-seven (A. D. 1897).

W. B. CONKEY COMPANY,
(Signed in Duplicate.)   W. B. Conkey, Pres.   (SEAL)
WITNESS:  H. P. Bogle.     Wm. Goldman,   (SEAL)"

No question is raised as to the sufficiency of the declaration. Appellant pleaded *non est factum* verified and a special plea that Charles Goldman, wrongfully and without appellant's consent, left its service. The cause was tried by the court, without a jury.

Charles Goldman, called by appellee, testified, in substance, that he was 22½ years old, and was the son of William Goldman, deceased, and January 14, 1897, was living with his parents in the city of Chicago in this State, and was,

at that date, working for appellant; that January 14, 1897, he was in the office of appellant when the contract was made, and William B. Conkey and William Goldman, witness' father, signed the instrument above set forth; that witness, after the instrument was signed, continued to work for appellant until August 20, 1898, when appellant removed from Chicago to Hammond in the State of Indiana; that witness was paid up, in accordance with the contract, till the last-mentioned date; that August 20, 1898, the book-binding establishment of appellant was removed from Chicago to Hammond, Indiana, and that, after that date, no book binding was done by appellant in Chicago, and that when appellant's establishment was so removed, witness looked for work elsewhere, because he did not want to leave his home, with his parents, in Chicago.

On cross-examination witness testified that W. B. Conkey told him that the whole plant was to be moved to Hammond, Indiana, and that witness remained with appellant till the last day the plant was in Chicago, and saw it moved, and knew that appellant had no other plant in Chicago.

The appellant did not offer any evidence.

Appellant's counsel contend that the instrument sued on does not purport to be signed by any agent or officer of the company; that there is no evidence that Mr. Conkey signed the company's name in its behalf; that the seal opposite the signature "W. B. Conkey, Pres.," is the personal seal of Mr. Conkey, and not the seal of the company, and that there being no seal of the company, covenant will not lie. The evidence is that the signature "W. B. Conkey" is the genuine signature of W. B. Conkey, and he signs the name of the company as president of the company.

In Smith v. Smith, 62 Ill., 493, a deed of conveyance was put in evidence, purporting to be from the Mississippi & Atlantic Railroad Company, which was signed "John Brough (R. R. Seal) Vice Pres. and Acting Pres. M. & A. R. R. Co." It was objected that the deed was not executed by the proper officers of the company, etc. The court say: "In the absence of legislative enactment or provision made in the

by-laws, corporations usually act through their president, or those representing him. He being the legal head of the body, when an act pertaining to the business of the company is performed by him, the presumption will be indulged that the act is legally done, and is binding upon the body. And, as a general rule, in the absence of the president, or where a vacancy occurs in the office, the vice-president may act in his stead, and perform the duties which devolve upon the president."

It will be observed that the seal, which is like that in this case, was next after the signature of the vice-president. The case is cited with approval in Ashley Wire Co. v. Ill. Steel Co., 164 Ill., 149, 152, and in numerous other cases.

In Wood v. Whelen, 93 Ill., 153, 162, the court say: "The execution of a mortgage under the seal of the company, regular on its face, by the proper constituted officer, is *prima facie* evidence it was executed by the authority of the corporation, and parties objecting take on themselves the burden of proving it was not so executed."

In Mullanphy Savings Bank v. Schott, 135 Ill., 655, 666, the court say, in respect to certain bonds and trust deed in question: "The bonds and the Krone deed of trust were executed by the president and secretary of the corporation, and under its seal, and this was *prima facie* evidence that they were executed by the authority of the company"; citing Wood v. Whelen, 93 Ill., 153. See, also, Phillips v. Coffee, 17 Ill., 154, and Springer v. Bigford, 166 ib., 495, 498.

The objection to the seal is based on its character and on the fact that it is next after and opposite the signature "W. B. Conkey, Pres." The contract purports, on its face, to be the contract of the appellant, and, immediately preceding the signature, these words are used: "In witness whereof, the parties aforesaid have hereunto set their hands and seal, this 14th day of January, in the year of our Lord one thousand eight hundred and ninety-seven (A. D. 1897)." Section 1 of chapter 29 of the Revised Statutes provides: "That any instrument of writing to which the maker shall affix a scrawl by way of seal, shall be of the same effect and obligation, to

all intents, as if the same were sealed." Hurd's Rev. Stat. 1903, p. 435. Manifestly the word "maker" includes corporations. In Reynolds' Heirs v. Trustees of Glasgow Academy, 6 Dana (Ky.) 37, the trustees were a corporation, and the question was presented, whether they could use a "scroll" as a corporate seal, and, if they did, whether the "scroll" attached to each of their names might be taken as their corporate seal. The statute of Kentucky provided that "any instrument to which the person making the same shall affix a scroll, by way of seal, shall be adjudged and holden to be of the same force and obligation as if it were actually sealed," and the court, after quoting the statute, held that the word "person" included corporations, and said: "A corporation may, therefore, adopt and use a scroll as their common seal, as well as individuals, under the provisions of the foregoing statute." It does not appear from the opinion that there was in Kentucky, as there is in this State, a statute providing that the word "person" may be applied to bodies politic and corporate. The word "maker" in our statute is more accurate, in the connection in which it is used, than the word person, in the Kentucky statute.

In 1st Morawetz on Corporations, section 340, it is said: "A corporation, like an individual, may adopt any seal which is convenient for the occasion," citing numerous cases.

In 2nd Cook on Corporations, section 722, the author says: "The courts will hold any device or form to be the corporate seal, if there was an intent to bind the corporation, and if the device was intended for the corporate seal," citing cases in note 3.

In Ill. Cent. R'd Co. v. Johnson, 40 Ill., 35, the signature to the appeal bond, as it appeared in the transcript of the record, was, "The Illinois Central Railroad Company, by J. M. Douglas, Atty. in fact. (SEAL.)" It was objected that the bond was not executed by the corporation, but by J. M. Douglas, under his private seal, in respect to which the court say: "This court does not know, judicially, that the railroad company has a seal other than a scrawl, such as appears in this record, and which purports to be a seal."

In Miller v. Superior Machine Co., 79 Ill., 450, an appeal bond in question was thus signed: "Superior Machine Co., by J. G. Struve, Agt. (Seal)." The court say: "It is contended that the seal was that of the agent, and not that of the company. We do not know, judicially, that the Superior Machine Company had a seal other than a scrawl, such as appears in the record, and which purports to be a seal. Illinois Central Railroad Co. v. Johnson, 40 Ill., 35. In the absence of proof, the presumption is that the seal used was the proper and only seal of the company. Phillips v. Coffee, 17 Ill., 155."

In Consolidated Coal Co. v. Peers et al., 150 Ill., 344, it was objected that a certain lease in question was not executed by the Abbey Coal & Mining Co. That company was named in the lease as the party of the second part. The attestation clause was, "In witness whereof the said parties have this day subscribed their names and affixed their seals. Dated December 20, 1870." The parties of the first part, two in number, signed their individual names, and opposite thereto affixed scrawls by way of seals. The signature for the company was "E. J. Crandall, President," and next after the word "president" and opposite thereto was a scrawl, by way of seal. The court overruled the objection, ib. 356, citing, pp. 357–358, Phillips v. Coffee, 17 Ill., 154; Ill. Cent. R. R. Co. v. Johnson, 40 Ill., 35, and Sawyer v. Cox, 63 Ill., 130.

In Proprietors of the Mill Dam Foundry v. Hovey, 21 Pickering, 417, the contract was between the foundry, a corporation, and Wm. Hovey. The execution on the part of the corporation was: "Robert Ralston, Jr., Treasurer for the Proprietors of the Mill Dam Foundry," and next following and opposite the word foundry was what consisted "of a wafer and a small bit of paper stamped with a common desk seal of a merchant." The court held that the instrument was a sealed instrument as to both parties to it, saying: "Now seals are in fact affixed to the instrument produced, and the legal presumption is, that they were placed there as the seals of the parties. The presumption must prevail until it should be rebutted by competent evidence. It has been

said that the seal does not appear to be one of a corporation. But a corporation as well as an individual person, may use and adopt any seal. They need not say that it is their common seal. This law is as old as the books. Twenty may seal at one time with the same seal."

In Lovett v. State Saw Mill Association, 6 Paige, 54, 60, Chancellor Walworth says: "The seal of a corporation aggregate affixed to a deed, is of itself *prima facie* evidence that it was so affixed by the authority of the corporation; especially if it is proved to have been put to the deed by an officer who was entrusted by the corporation with the custody of such seal. (See 1 Kyd on Corp. 268; and Angell & Ames on Corp. 115.) And it lies with the party objecting to the due execution of the deed to show that the corporate seal was affixed to it surreptitiously or improperly; and that all the preliminary steps to authorize the officer having the legal custody of the seal to affix it to the deed, had not been complied with."

It is objected, however, that there is no evidence that W. B. Conkey was president of the corporation, and that it was incumbent on appellee, in view of appellant's plea of *non est factum* verified, to prove that he was such president. Charles Goldman testified that W. B. Conkey executed the instrument, and also that he, Charles, worked for the W. B. Conkey Company from January 14, 1897, till August 20, 1898, and was paid therefor in accordance with the terms of the contract. Charles Goldman could not have worked for appellant during more than seven months and been paid by appellant, as stated, without its knowledge, and we think the fact that he so worked and the fact that he was so paid show a ratification of the contract by appellant, which ratification recognizes that W. B. Conkey was president, and that the seal opposite his name is the seal of the company. In Atwater v. Am. Exchange Bank, 152 Ill., 605, 620, it is said: "When a principal, with knowledge of all the facts, adopts or acquiesces in the acts done under an assumed agency, he cannot be heard to afterwards impeach them, under pretense that they were without authority."

Appellant's counsel further contend that, as the sums mentioned in the contract were, by the terms of the contract, payable to Charles Goldman, the contract was for his benefit, and the right of action was in him, and not in appellee's intestate, William Goldman. The contract sued on is that of appellant and William Goldman. Charles Goldman is not a party to it. It is under seal as to each of the parties, and, therefore, Charles Goldman could not maintain an action on it. Webster v. Fleming, 178 Ill., 140, 150. The language of the court, which is as follows, is applicable here: "At common law, only an action of covenant or debt could be brought upon a sealed instrument. The rule that, when one person covenants with another to pay money to or perform some act for the benefit of a third person named in the deed, the action must be brought in the name of the covenantee in the deed, and cannot be maintained by the third person in his own name, even though he is a party in interest, and even though it is expressly stated to be for his benefit, has its origin in the nature of the action of covenant, inasmuch as only a party to the instrument under seal can bring an action of covenant or debt. (5 Ency. of Pl. & Pr., pp. 343, 345, 352, 357, 358, and cases referred to in notes; Hager v. Phillips, 14 Ill., 260; Gautzert v. Hoge, 73 id., 30; Moore v. House, 64 id., 162.)"

Charles Goldman was a minor during the whole term of four years specified in the contract, and the evidence is that he lived with his parents. In Ford v. Henry H. McVay, 55 Ill., 119, a contract was made between Bernard McVay, the father of Henry H., and Fuller & Ford, in which it was provided, as in the present case, *nomine mutatur* that Fuller & Ford should pay to Henry H. McVay, who was a minor, certain sums of money per week. The court held, that, before a recovery could be had in the name of the minor, "it was necessary to show, by express arrangement, or from such circumstances as that it might be inferred, that the father had given his son his time, so as to entitle him to receive his own earnings," and that there was no such evidence in the case, and the court reversed the judgment of the trial court, in.

favor of the minor, on the ground that he could not maintain the action. The court also held that the contract was void as to the minor, not being in conformity with the statute in regard to apprentices, but was binding on the father.

The appellant's counsel cite Ziegler v. Fallon, 28 Mo. App., 295, in which case the court held that the minor plaintiff could recover, on the ground that, by the terms of the contract, the wages were to be paid to the minor, and, therefore, the wages became the minor's property. This is directly contrary to the decision in Ford v. McVay, *supra*. It appears clearly from the reasoning in the Ford-McVay case, that even though such contract as that in question were not under seal, there could be no recovery by the minor, in the absence of evidence that his father had emancipated him, and that the fact that the minor's wages were payable to him, by the contract, was not such evidence.

It is contended that there is no evidence that Charles Goldman was ready, able and willing to perform, and that there should have been a tender of performance by him or on his behalf. That he was ready, able and willing to perform is evidenced by the fact that he performed services, in accordance with the contract, until the time appellant removed its plant from Chicago to Hammond, Indiana; and the fact that appellant paid him for such services, in accordance with the terms of the contract, is evidence that the services were satisfactory. If, as appellee's counsel contend, appellant's removal of its entire establishment and business from Chicago to Indiana, thus rendering it impossible for Charles Goldman to perform the services in Chicago, was a breach of the contract by appellant, then no tender of Charles' services was necessary.

Appellant's counsel contend that there was no breach of the contract by appellent, saying that the contract contains "no agreement that appellant would maintain its manufacturing establishment in the city of Chicago," but citing no authorities on the question.

In Coventry v. Woodhull, Hobart's Reports, top p. 290, marg. p. 134a, the plaintiff, apparently the father of an ap-

Conkey v. Goldman.

prentice, sued the defendant, to whom the apprentice was bound, in covenant, for sending the apprentice out of the Kingdom, on a voyage to Bantam in the East Indies. The defendant pleaded that he so sent the apprentice, in the company of expert chirurgeons, the better to learn the art. The court, on demurrer to the plea, held it bad, saying, among other things: "And, generally no man can force his apprentice to go out of the Kingdom, except it be so expressly agreed, or that the nature of his apprenticeship doth import it; as if he be bound apprentice to a merchant adventurer, or a sailor, or the like." In note 1 by the American editor, Williams, J., of Massachusetts, it is said: "The doctrine of this case is recognized in Douglas 70, The King v. Stockland; 1 Mass., 172, Hall v. Gardiner; 8 Mass. 299, Davis v. Coburn; 19 Johnson, 113, Nickerson v. Howard." In the note should be 1 Doug. 70. We have examined the cases cited, and find the note to be correct.

In Coffin v. Bassett, 2 Pick., 356, the master sued in covenant, for the apprentice having left his service, and the defendant pleaded that the plaintiff was about to remove the apprentice from Massachusetts to Louisiana, to which the plaintiff replied *de injuria sua propria, absque tali causa.* The court, on demurrer, held the replication bad, saying: "We think it very clear from all the authorities, that an indenture of apprenticeship gives no authority to the master to transport the apprentice beyond the jurisdiction within which the contract was entered into, and with reference to which the parties contracted." Numerous cases are cited in support of the text.

In Davis v. Coburn, 8 Mass., 299, the plaintiff, to whom the minor had been bound by articles of apprenticeship, entered into in New Hampshire, undertook by contract with the defendant, a resident of Massachusetts, to assign to him the services of the apprentice for a remaining part of the term of apprenticeship. The consideration for the assignment was $150 to be paid by the defendant. The case was submitted for decision on an agreed statement of facts. The court say: "That a father, during the minority of a child, should have a

power to dispose of a requisite portion of his authority, for the purposes of education and instruction, is frequently important and necessary to the welfare of the child; but in doing this, a due regard to the interest of his child will render him cautious to what hands he confides the trust; and for this purpose a wise and prudent parent will be as anxious about the moral qualities of the man, to whom he delegates his authority, as to his competency in other respects. But all his attention in this regard would be useless, if the master might immediately transfer or assign his authority to another; not merely within the limits of the State to which he belongs, but, as was the case here, into another independent jurisdiction. And if he could transfer him into Massachusetts, I see not why he might not have sent him to Georgia, or even to China. That a master should have such a legal authority would be monstrous; and if he have it not, to exercise it is a violation of natural right, and immoral, and consequently can be no good consideration for the support of an action. But the decision of the question does not *now* depend upon reason alone. It has long been determined by authority."

Randall v. Rotch, 12 Pick., 107, is to the same effect, Shaw, C. J., delivering the opinion.

In Vickere v. Pierce, 3 Fairfield, 315, the plaintiff, Vickere, covenanted with the defendant, Pierce, that the apprentice should serve the former for three years at the trade of a house carpenter, the apprentice joining in the contract. The contract was entered into in Maine, and the plaintiff, in a little more than two years after the date of the contract, required the apprentice to go with him to the province of New Brunswick, which the apprentice refused to do, and the question was, whether this refusal was a breach of the contract. The court held not, saying: "The contract into which Bean and Pierce entered was with reference to employment as apprentice to learn the trade of house-carpenter within this State. No provision is made for pursuing the business or giving instruction in any other government. And unless it is distinctly communicated in the agreement, it must be deemed a violation of the spirit of the contract, to trans-

port the apprentice out of the State." Citing authorities.

In Commonwealth v. Edwards, 6 Binney, 202, the court is even more emphatic, saying: "An apprentice cannot be taken out of this State, not even with his consent nor that of his guardian; for the guardian cannot be supposed to have the power of contracting for such purpose, the law of the State not expressly giving it, and perhaps it could not give it, so as to have the extraterritorial effect of continuing that apprenticeship beyond the jurisdiction."

Walters v. Morrow, 1 Houston (Del.) 527, is a case in which the facts are very similar to those in the case at bar. The contract, which was not a statutory one, was made in the city of Wilmington, Delaware, where the parents of the minor resided, and the defendant, during the term of service contracted for, removed his business from Wilmington to the city of Baltimore in the State of Maryland. The court held that, by such removal, the defendant put it out of his power, and the power of the other parties to the contract, to perform its stipulations.

Section 16 of the Apprentice Act, Hurd's Rev. Stat., p. 161, provides: "It shall not be lawful for any master to remove any clerk, apprentice or servant, bound to him as aforesaid, out of this State without the consent of the county court," etc. The contract in question is not a statutory one, but, as held in Ford v. McVay, *supra*, it is valid, at common law, and binding on the father and appellant, and we think section 16, above referred to, may be fairly regarded as declaratory of the policy of this State in respect to minors situated as was the minor, Charles Goldman.

The removal by appellant of its entire plant from the city of Chicago, Illinois, to Hammond, Indiana, was a breach of the contract in question. It is assigned as error that the damages are excessive, but this is not argued, and, therefore, must be deemed waived.

The judgment will be affirmed.

*Affirmed.*