MORRIS RABINOVICH, Assignee of Delaware Trust Company, *vs.* LIBERTY MOROCCO COMPANY.

1. CORPORATIONS—INSTRUMENT SEALED BY NOTARIAL SEAL OF SECRETARY OF CORPORATION INSTEAD OF CORPORATE SEAL HELD VALID.

Under *Rev. Code* 1915, § 2627, relating to assignments of bonds and specialities, and *General Corporation Law*, § 2, *par.* 3, granting corporations the right to make and use a common seal and alter the same at pleasure, where the vice president and the secretary of the corporation were directed by resolution of board of directors to assign a mortgage, and it appeared from the face of the assignment that the officers intended to affix thereto the corporate seal and thought they had done so, but by mistake affixed a notarial seal of the secretary, the assignment was legal.

2. CORPORATIONS—CORPORATION HAVING SEAL MAY ADOPT FOR PARTICULAR TRANSACTION ANOTHER SEAL.

Under *General Corporation Law*, § 2, *par.* 3, granting to corporations the right to make and use a corporate seal, and alter it at pleasure, a corporation may adopt *pro hac vice*, for particular transaction, any seal, or any device resembling a seal, but it is necessary that such seal or device shall be used and intended as the seal of the corporation and not of an individual.

(*February* 11, 1924.)

PENNEWILL, C. J., RICE, HARRINGTON, RICHARDS and RODNEY, J. J., sitting.

*Herbert H. Ward, Sr.,* (of Ward, Gray & Neary) and Charles F. Curley for confirmation of sale.

Opinion.

*Eugene E. Berl* and *Julian C. Walker* against confirmation of sale.

CASE HEARD BEFORE COURT IN BANC.

A petition presented to the Superior Court of New Castle County, at the January Term, 1924 by Charles C. Kurtz, receiver of Liberty Morocco Company, contained, *inter alia*, the following averments:

That said company gave to the Delaware Trust Company on the 17th day of November, 1921, a bond and mortgage to secure the real debt of twenty thousand dollars, and that by an instrument bearing date the 6th day of September, 1923, the Delaware Trust Company purported to assign said mortgage and its accompanying bond to Morris Rabinovich, who later foreclosed the mortgage.

That said instrument which purported to assign said mortgage and bond was not in fact an assignment in law, because it was not sealed with the seal of the Delaware Trust Company. That the sale made under the mortgage should not, therefore, be confirmed.

The case was certified by the Superior Court to the Court in Banc for an opinion of the law judges respecting the legality of said assignment.

PENNEWILL, C. J., delivering the opinion of the Court:

The only question before the Court is whether the assignment of the mortgage by Delaware Trust Company to Morris Rabinovich is, under the law of this State, valid. The seal affixed to the assignment is not the corporate seal of the company but the notarial seal of its secretary. In all other respects the assignment is admittedly legal and in regular form.

[1] The instrument purporting to make the assignment, states that it was executed by Charles M. Curtis, vice-president of the company; that he subscribed the name of the company thereto, and caused its corporate seal to be thereto affixed. The seal that was affixed is attested as the corporate seal of the Delaware Trust Company. The witnessing clause states that the assignment was sealed and delivered in the presence of Willard Hamilton, the

witness thereto, who was also the Notary Public who took the acknowledgment of the assignment. It also appears that Charles M. Curtis, the vice-president of the Trust Company, the assigning party, acknowledged the assignment to be the deed of said Trust Company, that the seal thereto affixed was its corporate seal, and that his authority to so execute and acknowledge said instrument was conferred by a resolution of the board of directors of the Trust Company. So that, the concrete and only substantial question is, whether the seal used in making the assignment is in law the seal of the Delaware Trust Company.

While it does not appear from the papers filed in the case that the Delaware Trust Company had a corporate seal, it is not denied, and the Court will assume that said corporation had such a seal, and that the same had been legally adopted.

There can be no doubt, therefore, and it is not denied, that at the time the assignment was executed there were two seals available, one the corporate seal of the company and the other the notarial seal of its secretary, and that the latter seal was used by mistake or inadvertence in place of the corporate seal.

*Section* 2627 of the *Revised Code*, which provides for the assignment of specialties and suits thereon in the name of the assignee, is as follows:

"And the assignees, or endorsees, or their executors, or administrators, may, in their own name, sue for and recover the money due thereon; provided always, that all such assignments of bonds, or specialties, shall be under hand and seal, and before at least one credible witness."

*Paragraph* 3 of *Section* 2 of the *General Corporation Law* (22 *Del. Laws, c.* 394) grants to corporations the right "to make and use a common seal, and alter the same at pleasure."

The party contesting the validity of the assignment contends, that the seal affixed thereto cannot be regarded as the seal of the Delaware Trust Company because it was never adopted as such by action of its board of directors; and also, that it was not in fact used as the seal of the company by the officers who executed the assignment. In this connection the distinction is sought to be made, that the seal that was used could not have been adopted as

the corporate seal of the assignor because there is nothing to show that its secretary, who affixed the seal, knew he was using his notarial seal. It is argued that if he was not consciously using his notarial seal as the corporate seal there was no adoption of this seal as the seal of the corporation.

[2] The argument of the contestant is confined to these two points, and necessarily so, because it is not questioned that whatever may have been the rule in former times, it is now the prevailing doctrine, even in states that once held otherwise, that a corporation having a corporate seal may adopt *pro hac vice*, for the particular transaction, any other seal, or any device bearing semblance to a seal, as its own corporate seal. Manifestly the modern doctrine is based largely on the importance of carrying out the clear intention of the corporation making the deed, and not defeating such intention by adhering to a rule that would work a hardship in many cases, when corporations are so common and corporate business so extensive. But the law does require that the seal or device, whatever it may be, shall be used and intended as the seal of the corporation, and not of the individual.

"While a corporation may alter its seal at pleasure, and may adopt as its own the private seal of an individual if it chooses so to do, nevertheless when so adopted it must be used as the seal of the corporation; if it is affixed as the seal of the individual, it cannot be treated as the seal of the corporation, and a declaration in the instrument that it is so affixed is conclusive of its character and effect." 14 *Corpus Juris*, § 406; 24 *R. C. L. p.* 692.

It is also well settled that the adoption by a corporation of some other seal for the particular transaction is ordinarily established by showing authority on the part of the officers to execute an instrument under seal on behalf of a corporation, and the fact of attaching some seal to the name of the corporation with the intent to seal on its behalf. And furthermore, that such a seal is to be deemed the proper and common seal of the corporation, in the absence of evidence to the contrary, where such intention appears on the face of the instrument. 14 *Corpus Juris*, §§ 405, 406; 2 *Fletchers Cyc. Corporations*, § 753; 7 *Ruling Case Law*, § 672.

When corporate officers who have been authorized by the corporation to execute a particular instrument that requires the

use of the corporate seal, affix some other seal as the corporation seal, and such instrument bears on its face clear evidence of an intention to execute the same under the corporate seal of the corporation, and to adopt, as the seal of the corporation, the seal actually used as such, it will be regarded *prima facie* as the seal and act of the corporation in the absence of evidence showing that the seal that was affixed was not intended to be the corporate seal. *Bank of Middlebury v. Rutland & W. R. Co.*, 30 *Vt.* 159, 169, 171; *Tenney v. East Warren Lumber Co.*, 43 *N. H.* 343; *Porter v. A. & K. R. Co.*, 37 *Me.* 349; *Mill Dam Foundery v. Hovey*, 21 *Pick.* (*Mass.*) 417, 428; *Reynolds v. Glasgow Academy,* 6 *Dana* (*Ky.*) 37; *Conkey v. Goldman*, 125 *Ill. App.* 161; *District of Columbia v. Camden Iron Works*, 181 *U. S.* 453, 460, 21 *Sup. Ct.* 680, 45 *L. Ed.* 948; *Jacksonville, etc., Railway Co. v. Hooper*, 160 *U. S.* 514, 518, 519, 16 *Sup. Ct.* 379, 40 *L. Ed.* 515; *Johnston v. Crawley*, 25 *Ga.* 316, 327, 71 *Am. Dec.* 173; *Foley, etc., Co. v. Bell*, 4 *Ga. App.* 447, 61 *S. E.* 856; *Amer. Investment Co. v. Cable Co.*, 4 *Ga. App.* 106, 60 *S. E.* 1037; *N. Y. Life Ins. Co. v. Rhodes*, 4 *Ga. App.* 25, 60 *S. E.* 828, 830; *City of Kansas v. Hannibal, etc., R. Co.*, 77 *Mo.* 180.

Such is the doctrine recognized by practically all the authorities today, and it is particularly applicable to the facts of the present case. The notarial seal that was used was used by accident or mistake. The officers who executed the assignment, the vice-president and secretary, of the company, were authorized and directed by a resolution of the board to perform the act, and it appears on the face of the assignment that the officers intended to affix thereto the corporate seal and thought they had done so. There can be no doubt that the secretary, when he affixed his notarial seal, believed he was using the corporate seal of the company, and it is equally clear that the impression made thereby was intended to be the company's corporate seal, no matter whether the officer was conscious or unconscious of the particular kind of seal he used to make the impression.

In the Bank of Middlebury Case, the Court said:

"But it was never supposed that if authority were shown from the corporation to attach their seal to the contract, that it was indispensible that use should be made of the ordinary common seal of the company. Any other seal would have the same effect if adopted by the company. And this is ordinarily established by showing authority to execute a contract on behalf of the company under seal, and the fact of attaching some seal to the name of the company with the intent to seal on their behalf.

"So that, at present, nothing more is requisite than to show the authority of the agent to contract on behalf of the company, in the particular form, i. e., with a seal."

In *Reynolds v. Glasgow Academy* the Court say:

"To presume that they are their individual seals, would be to presume that which they have not said, and which would be repugnant to the manifest intention of the parties, and the whole object and tenor of the instrument. To indulge in such presumption, would be to destroy and not to sustain, the deed—to defeat the intention of the parties, and not to carry it into effect. Such presumption should not, therefore, be indulged, or such ccnstruction given to the deed, or the scrolls which are used. As the scrolls may be used by a corporation, we should rather presume that they were used as their corporate seal, especially as that presumption supports the deed, and comports with the clear object of the instrument."

In respect to the contention that there could be no adoption of a seal except by appropriate action of the board of directors, it might be said, that if the contention is sound such a question as is presented in this case would never arise. If the seal used *pro hac vice* is formally adopted by the board no one would question its validity. There would be no room for argument. The law expressly grants to a corporation the right to alter its seal, and it is universally conceded now that a corporation may adopt for a particular transaction a seal other than its own corporate seal. The question arises, not when the corporation has formally adopted the seal, but when its officers, who are clothed with authority to perform a particular act that required the corporate seal, use another seal as the seal of the corporation. In the instant case, as we have said, the vice-president and secretary were not only authorized but directed to execute the assignment for the company, and the face of the instrument, including the attestation, signatures, witness clause and acknowledgment clearly show that they cairied out the intention of the company by performing the act, and also that the seal they used was used as the corporate seal of the company. If the adoption of a seal *pro hac vice* must be by

Opinion.

action of the board it would be difficult, if not impossible, for a stranger to the corporation proceedings to prove that the seal had been adopted by the board.

"It would in most instances be difficult, and in a great many impossible, for persons with whom corporations deal, strangers to the proceedings of corporate boards, to prove that a particular device had been adopted by them as a seal.   To prove the authenticity of the seal the vote of a competent board of directors that the corporate or other seal was directed to be used is not necessary, and proof that the seal affixed to the deed is the corporate seal is unnecessary when the deed is shown to have been executed by one having authority.   Under such circumstances the seal is *prima facie* that of the corporation." 7 *Ruling Case Law*, § 108.

Counsel for the contestant have cited the following authorities in support of their contention, viz.: *Clarke's Lessee v. Courtney*, 5 *Pet.* 343, 350, 8 *L. Ed.* 140; *McCaulley v. Jenney*, 5 *Houst.* (*Del.* 1875) 32; 1 *Clark and Marshall on Corporations*, § 192; *Perry v. Price*, 1 *Mo.* 664; *Mitchell v. St. Andrews Bay Land Co.*, 4 *Fla.* 200.

We do not think these authorities are particularly in point, but even if they are, it will be observed that they are by no means recent ones.   It is conceded that cases, and statements of text writers, may be found that conflict with the modern rule, and support a doctrine that no longer prevails.

In regard to the case in this state—*McCaulley v. Jenney*—it need only be said that an examination of the facts discloses that they are in no wise analogous to those in the case before this Court. The agreement sued on was made with Nicholas Jenney, president of the Wilmington Rifle Club.   The action was not against the club but against Jenney personally.   Although incorporated, the club had never had a corporate seal.   Each of the parties had executed the contract by subscribing their names and affixing their respective seals to it in the form of scrolls;   the defendant, however, adding to his signature at the time of subscribing it the words, "President of the Wilmington Rifle Club."   The Court held that the agreement was not the individual covenant of Jenney, neither was it the covenant of the company of which he was president because it was not sealed with the seal of the company.   There was no claim that the president was authorized by the company

to make the contract, or that he affixed his own seal as the seal of the company. For these and other obvious reasons the case is not in point.

The Court are of the opinion that the assignment in question is legal.

NOTE—For the adoption of a seal by an individual, see also *Deputy v. Hastings, Admr., supra, p. 345.*